J. A. BOPPART, Respondent, v. ILLINOIS SURETY
COMPANY, Appellant.

Kansas City Court of Appeals, February 21, 1910.

1. PRINCIPAL AND SURETY: Bond to Secure Building Con-
tract: Notice of Default: Waiver. A waiver presupposes
knowledge of the thing waived. A party relying upon a waiver
must prove that it was made with full knowledge of all the
facts by the party who releases a right.

2. ———: ———: ———. The obligee in a bond given to se-
cure the performance of a building contract did not give im-
mediate notice of default of the contractor, as the conditions of

the bond required him to do. Thereafter the agent of the bond company told obligee that the matter would be settled up, and accepted the balance of the unpaid contract price for the building. Under the evidence the agent waived the requirement for immediate notice.

3. ———: ———: ———: **Extension of Time to Complete Contract.** The building contract provided for an extension of time of completion if made in a certain way by the architect. The extension was granted but not in the manner provided by the contract. The right to forfeit the contract if not properly extended was plaintiff's, and he could waive that right, and his act in so doing did not release the surety on the bond.

4. ———: ———: ———. The right of a surety to stand on the letter of his contract has less force where the bondsman is a surety for hire. Such a surety stands more nearly in the position of an insurer, and in such a case mere technical and immaterial departures from the letter of the contract will not relieve the surety.

5. ———: ———: ———. Changes which are mere deviations in the manner of performance of the contract and do not destroy its identity will not relieve the surety.

Appeal from Jackson Circuit Court.—*Hon. Hermann Brumback,* Judge.

AFFIRMED.

*Battle McArdle* for appellant.

(1)  A waiver presupposes knowledge of the thing to be waived. A party relying upon a waiver must prove that it was made with knowledge of all the facts by the party who thus releases his rights. In the absence of such knowledge there can be no waiver. Callies v. Modern Woodmen, 98 Mo. App. 521; Dyas v. Hanson, 14 Mo. App. 363; Thompson v. Ins. Co., 169 Mo. 12; Hearsh v. Ins. Co., 130 Mo. App. 457; Riley v. Ins. Co., 117 Mo. App. 229; Burgess v. Ins. Co., 114 Mo. App. 169; McCollum v. Ins. Co., 61 Mo. App. 352; Fink v. Ins. Co., 66 Mo. App. 513; Dolan v. Ins. Co., 88 Mo. App. 666; Polk v. Assurance Co., 114 Mo. App. 514; Rudd v. Ins. Co., 120 Mo. App. 7; Okey v. Ins. Co., 29 Mo.

App. 105. (2) A surety may stand on the strict letter of his contract. If it is altered without his consent he is discharged. This rule applies to building contracts. A surety is a favorite of the law. If changes are made in plans and specifications, and work done according to such changes, and under conditions not prescribed by the contract, the surety is discharged. Burnes Estate v. Fidelity and Deposit Co., 96 Mo. App. 467; Lumber Co. v. Gates, 89 Mo. App. 201; Bagwell v. Surety Co., 102 Mo. App. 707; Eldridge v. Fuhr, 59 Mo. App. 45; Beers v. Wolf, 116 Mo. 179; Evans v. Graden, 125 Mo. 72; Reissaus v. Whites, 128 Mo. App. 135; Martin v. Whites, 128 Mo. App. 117; School District v. Green, 134 Mo. App. 421. (3) An alteration of the contract consisting of an extension of time in which the building is to be completed, if made without the consent of the surety, will discharge it from liability. Johnson v. Bank, 173 Mo. 171; Judah v. Zimmerman, 22 Ind. 388.

*G. W. Haverfield* for respondent.

(1) When a surety, knowing the facts, does that which is inconsistent with its intention to insist upon a strict compliance with the conditions precedent of the contract, it is treated as having waived their performance, and the obligee may recover without proving performance. Burgess v. Ins. Co., 114 Mo. App. 180; Polk v. Assurance Co., 114 Mo. App. 518; Okey v. Ins. Co., 29 Mo. App. 111; Crowder v. Casualty Co., 115 Mo. App. 540; Stearns Law of Suretyship, p. 453; Surety Co. v. Pauly, 170 U. S. 133; Life Ins. Co. v. Surety Co., 34 Fed. Rep. 291. (2) Immaterial deviations in the work embraced in a building contract, although not made in accordance with the provisions of the contract, will not release the surety. When the contract itself contemplates its alteration, then it may be altered without affecting the liability of the surety. Martin v.

White & Cox, 128 Mo. App. 123; Lumber Co. v. Gates, 89 Mo. App. 205; Fairbanks Co. v. Bond & T. Co., 97 Mo. App. 212. (3) Where the building contract provides for extension of time for completion beyond the date named, and the contractor fails to complete the work on account of the conditions named in the contract as grounds for extension, but does not make application for such extension in the manner provided, the mere passive consent of the owner will not amount to a contract for extended time, and will not release the surety. Stearns Law of Suretyship, p. 115; Burris v. Davis, 67 Mo. App. 214; Wing, etc., Co. v. U. S., etc., Co., 150 Fed. Rep. 675.

BROADDUS, P. J.—This is an action against the surety, alone, for the default of its principal. The bond is for the penal sum of two thousand dollars, conditioned for the performance by one G. A. Love of all the terms and conditions of a certain building contract entered into between plaintiff and said Love. By the terms of this contract, dated October 15, 1906, Love agreed to construct a two-story frame dwelling, furnish all material and labor, and to complete the same free of all mechanics' liens, according to plans and specifications prepared by A. Van Brunt and Brother, Architects, by January 20, 1907. The plaintiff agreed to pay the contractor $3912, upon certificates furnished by the architects.

There were various conditions in the contract among which was, that plaintiff should purchase the hardware to be used and should have credit on the contract price for the same; that Love should use good material and keep the house in good repair for one year; "that said surety shall be notified in writing of any act, omission or default on the part of said principal, or his, their or its agents or employees, which may involve a claim or loss for which the said surety is or may be responsible hereunder, within twenty-four hours after the occur-

rence of such act, omission or default shall have come to the knowledge of the owner, or his, its or their agents, officers or representative;" and that "said notification must be given by a United States registered letter mailed to said surety at its office in Chicago, Illinois;" that no alterations were to be made in the work except upon the written order of the architects, the amount to be paid to the owner or allowed by the contractor by virtue of such alterations to be stated in said order; that "should the contractor be delayed in the prosecution or completion of the work by the act, neglect or default of the owner, of the architects, or any other contractor employed by the owner upon the work, or by any damages caused by fire, lightning, earthquake, cyclone, or other casualty for which the contractor is not responsible, . . . then the time herein fixed for the completion of the work shall be extended for a period equivalent to the time lost by reason of any or all of the causes aforesaid, which extended period shall be determined and fixed by the architects, but no such allowance be made unless a claim therefor is presented in writing to the architects within forty-eight hours of the occurrence of such delay;" and that the owner, in case any lien shall be established against the property which is chargeable to the contractor, shall have the right to retain out of any payment then due or thereafter to become due an amount sufficient to completely indemnify him against such lien or liens; and should there be any such claims after all payments are made, the contractor shall refund to the owner all moneys that the latter may be compelled to pay in discharging any lien on said premises made obligatory in consequence of the contractor's default.

The plaintiff alleges that there was a breach of the contract in several particulars, viz.:   That from time to time as the work progressed he paid to the contractor $3500 of the contract price, but that the contractor abandoned his work before completion "and failed and

refused to complete the building free and clear of mechanics' liens and left many claims for material furnished for the building which were reduced to judgment and paid by plaintiff." The plaintiff then makes an itemized statement of such claims: That the work performed by the contractor was not done according to the plans and specifications, stating the default in that respect, and that he was damaged in the sum of $100 thereby. That plaintiff paid for the hardware used in said building and that he did not receive any credit therefor in the payments he made as aforesaid.

The plaintiff pleads the clause in the bond whereby plaintiff should notify the defendant in writing of any act, omission or default on the part of the contractor which might involve a claim or loss for which defendant was responsible under the bond, within twenty-four hours after the occurrence of such default shall have come to his knowledge by registered letter as stated, but that defendant waived the giving of such notice, by defendant's agent, whereby defendant agreed to pay such loss, and further by the acceptance of the certificate for the balance due to the contractor on final settlement.

The defense is that the building had not been completed within the date fixed in the contract, but that by agreement between plaintiff and the contractor the time for its completion was extended without the consent of the surety; and that changes were made in the plans and specifications and work done accordingly, without the consent of the surety.

In March, 1907, the plaintiff was informed that there were unpaid bills for material furnished to the building and work done. There were some changes made in the specifications without the knowledge of the defendant, but most of them were made by the architect in the manner provided by the contract; the others were slight as we shall see hereafter.

On January 20th, the contractor not having completed the work on account of the conditions of the

weather, further time was given him for that purpose by the architect without notice to defendant.

The plaintiff paid for the hardware used in the building in the sum of $69.91, for which he received no credit.

There was evidence tending to prove that he had been damaged in the sum of $100, by reason of defective material used in the construction of the building and by reason of defective work in its construction.

Sometime in March, 1908, plaintiff first learned of one of the said outstanding lien bills, but he did not give defendant notice thereof within the time provided for by the bond. Sometime thereafter he with his architect had a meeting with the defendant's agent in reference to the matter, at which time a certificate of the balance due the contractor was handed to the agent who received and kept it. The plaintiff was asked on this occasion, or some other about that time, what the agent said to him. In answer he stated that the agent said: "Boppart, you don't need to worry after this claim at all; we will acknowledge this default and settle the matter right up. You don't need to hire a lawyer in this case because it will be settled right up." At this time no suits had been filed to enforce any lien for materialmen for material furnished.

On May 29th, plaintiff gave defendant notice of said unpaid lien charges by registered letter.

The plaintiff recovered judgment for the excess he paid for building material over the contract price for the erection of the building; for the damage he sustained on his claim that the contractor had not furnished good material as provided for in the contract; and for the amount he paid for the hardware. At the close of plaintiff's case and at the close of all the evidence defendant requested the court to instruct the jury to return a verdict in its favor, which the court overruled. The defendant appealed.

The position of defendant is, that plaintiff forfeited

the obligations of the bond, by his failure to give notice, as required by its terms, of the unpaid bills for material used in the building, and of the breach of the contractor in not completing the building in time; and because of unauthorized change in the plans and specifications whereby work other than that provided for in the contract was performed by the contractor.

On the other hand it is contended by plaintiff that defendant waived notice of said outstanding and unpaid liens, when its agent accepted the balance of the unpaid contract price for the building and made the statement we have quoted; that the additional time given for a completion of the building by the contractor is not a ground for forfeiture; and that the additional work other than that provided for in the plans was not material and did not affect the risk.

The evidence is not conflicting and the most important question is that of waiver. The trial court tried the case upon the theory that when defendant's agent McClure accepted the certificate or payment for the balance due on the contract price for the building, and made the statement that the company would settle the matter for unpaid material, and that he need not worry and employ a lawyer "in this case because it would be settled right up," it waived the conditions in the bond for notice of the contractor's default to pay for material.

The defendant contends that this was not a waiver for the reason that it was not shown that the agent at the time knew that plaintiff had not given the required notice of such default. A waiver presupposes knowledge of the thing to be waived, and a party relying upon a waiver must prove that it was made with knowledge of all the facts by the party who releases a right. [Callies v. Modern Woodmen, 98 Mo. App. 521; Dyas v. Hanson, 14 Mo. App. 363.]

Giving to the rule its broadest intendment we are of the opinion that when defendant's agent accepted the balance of the unpaid contract price, accompanied with

the expression to the effect that plaintiff need not worry or employ a lawyer "in the case because it would be settled right up," he assumed in behalf of his principal the duty of adjusting the delinquencies of the contractor without regard to whether notice had or had not been given of such delinquencies; and that it amounted to a waiver of the notice itself.

The fact that plaintiff permitted or gave his consent to an extension of time for the completion of the building did not amount to a violation of the provision of the contract which provided that the time for such extension should be fixed by the architect. The contract provided for an extension of time on account of the conditions which demanded such extension, but the fact that it was not made in the manner pointed out did not forfeit the contract unless plaintiff insisted on such forfeiture, as this was a provision made for his benefit and which he had the right to waive and did waive by his assent to such extension. And the effect of the extension was not to relieve defendant as surety by allowing the contractor additional time to fulfill the obligations of the contract. [Wing & Bostwick Co. v. United States Fidelity & Guaranty Co., 150 Fed. Rep. 672.]

The court submitted to the jury the question whether the changes in the specifications were material. The jury returned a verdict that they were not.

The general rule is that a surety has the right to stand on the strict terms of his contract. This rule is especially applicable to voluntary sureties who have no interest in the subject-matter of the contract. Where however the surety has received a consideration in the way of hire the contract is somewhat in the nature of an indemnity. Having enjoyed compensation for his undertaking, it is the policy of the law, when properly interpreted, to disregard technical and immaterial departures from the letter of the contract on the part of the obligee. This modification of the rule is almost universally applied to contracts of insurance. The obliga-

tions of a surety company, while not strictly insurance, partakes more or less of that character. They clothe their obligations with all sorts of conditions for the violation of any of which they provide for discharge from liability altogether, notwithstanding they have reaped the benefits of the obligation. They stand on a different footing from an ordinary or straight obligation, uncoupled with any conditions whatever except those provided for in the letter of the contract itself.

We are of the opinion that the rule is that a substantial compliance with the contract upon the part of the obligee is all that is required in cases like this, and that no mere technical and immaterial departures from the letter of the contract should operate to defeat the purpose of such contract by relieving the surety from all liability.

The contract at bar contemplated changes in the specifications, and provided the manner in which they should be brought about. Some were made in conformity to the strict letter of the contract; one or two unimportant ones were made without such conformity, one for which the plaintiff paid, and the other consisted of two areaways around windows which were constructed by the contractor as a matter of necessity to prevent water from running into them. Under such circumstances we do not believe that there was such a change in the specifications as would justify a court in holding that its effect would operate to discharge the surety. The changes as we have seen were mere deviations in the manner of performance of the contract and in no way tended to destroy its identity. [Martin et al. v. Whites et al., 128 Mo. App. 117.]

What we have said disposes of all the objections raised by defendant to the giving and refusing of instructions by the court. And we are of the opinion that the judgment was for the right party and ought to be affirmed, and it is so ordered. All concur.