EMILY K. FAIRLEIGH and VIRGINIA LEE FAIRLEIGH, an infant, by EMILY K. FAIRLEIGH, her guardian, Appellants, v. FIDELITY NATIONAL BANK AND TRUST COMPANY OF KANSAS CITY.—73 S. W. (2d) 248.

Division One, June 12, 1934.*

*NOTE: Opinion filed at September Term, 1933, April 19, 1934; motion for rehearing filed; motion overruled at May Term, June 12, 1934.

*Charles C. Madison* and *Harry Howard* for appellants.

*Bowersock, Fizzell & Rhodes* for respondent.

FERGUSON, C.—This is a suit in equity brought by the beneficiary in a testamentary trust against the trustee. Plaintiff, Emily K. Fairleigh, is a daughter of Richard H. Keith, deceased. It is alleged that by his will Richard H. Keith "bequeathed and conveyed" a certain share in his estate in trust to the defendant as trustee and directed that such part of his estate "be invested by defendant as sole trustee in safe securities and the income thereof be paid at convenient periods to the said Emily K. Fairleigh;" that on or about July 8, 1913, and as a part of said trust estate, defendant as such trustee received certain shares of stock of the Central Coal & Coke Company; that said shares of stock "were not at any time on or after July 8, 1913, safe securities, and defendant instead of selling said stock and reinvesting the proceeds thereof in safe securities, as it was the duty of said trustee to do . . . has kept and is keeping said stock on hand in total disregard of its obligation as trustee and the market value of said stock after July 8, 1913, has greatly depreciated and the income therefrom . . . has not equaled the income which would have been derived from safe securities if said stock had been sold and the proceeds invested in safe securities." The prayer of the bill is that "defendant be required to dispose of" said shares of stock "to the best advantage . . . account for depreciation in value of the principal and loss

of income . . . and that so much of the proceeds of the sale and recovery . . . as may be principal be invested in safe securities . . . and so much thereof as may be income be ordered paid to the plaintiff Emily K. Fairleigh.'' The answer is that defendant ''did at all times fully perform its duties and obligations as Trustee under the will . . . and at all times acted in strict conformity to the terms thereof'' and further that in continuing to hold said shares of stock it acted ''at the special instance and request of the plaintiff, Emily K. Fairleigh; that said plaintiff fully acquiesced therein and is estopped to complain thereof.''

The testator was a resident of Jackson County. Defendant at all times located at Kansas City, Missouri, was originally incorporated as The Fidelity Trust Company under the laws of this State relating to trust companies but at a later time, not shown by the evidence, was converted into a National Bank, under the acts of Congress, but qualified, and with the right, to act as trustee under the laws of this State. We shall hereinafter frequently refer to defendant merely as the trust company. The cause was tried in the Circuit Court of Jackson County. The finding and judgment of the chancellor was for defendant and plaintiffs appeal.

Richard H. Keith entered the coal business in 1871; later a partnership composed of Richard H. Keith and W. C. Perry was formed, the firm name being Keith & Perry. In 1893 the partnership business was incorporated under the name of Central Coal & Coke Company. Keith was the first president of the Central Coal & Coke Company and continued in that position until his death in 1903. The Central Coal & Coke Company had a capital stock of $7,000,000. It owned 66,000 acres of coal lands and mined and sold coal; it also owned a large acreage of timber lands in Louisiana and Texas and engaged on an extensive scale in the manufacture and sale of lumber. The annual production of the company was about four million tons of coal and 160,000,000, to 170,000,000 feet of lumber. Keith seems to have been eminently successful in the business field and while the evidence does not show the extent and value of the property composing the Keith estate at the time of his death enough appears here and there in the record to indicate that he possessed large and valuable property interests. It appears that he owned a large number of the shares of stock of the Central Coal & Coke Company (the number thereof or per cent is not shown). We note that it was developed that he owned one-third of the stock of another corporation, the Louisiana & Texas Lumber Company, which was also engaged in the lumber business. It also appears that he owned an undivided one-half interest in the Keith-Perry Building in Kansas City. The value of that interest is not shown but some years after Keith's death his heirs purchased the other undivided one-half interest in that property at a valuation of $250,000. A property designated as

the Keith homestead was a part of the estate. It is apparent too that at the time of his death Keith had some considerable amount of cash on hand and other investments, in addition to those mentioned, in the form of bonds and corporate stocks. With this general summary indicating the form and nature of the property holdings of the testator, both at the time the will involved was executed and at the time of his death, we submit an abstract of the will:

Paragraph 1. Revokes "all former wills."

Paragraph 2. Directs all just debts be paid.

Paragraph 3. Bequeaths $10,000 to Laura Lee, a Niece.
(By codicil bequeaths $20,000 to his sister, Virginia Lee.)

Paragraph 4. Bequeaths all household furniture, horses, carriages and vehicles to his wife, also a sum of money "which added to such life insurance as she may collect on my life shall make the sum of $25,000."

Paragraph 5. (As amended by codicil) bequeaths $10,000 in trust to his brother Robert Keith "to be used by him as he may see fit for the benefit of my brothers, James E. Keith and William T. Keith. Such trustee is by me hereby vested with the power and discretion to make such use and disposition of said sum of money for the purposes aforesaid as he may see fit," etc.

Paragraph 6. Bequeaths to the Fidelity Trust Company (this defendant) and its successors "the sum of $50,000 in cash or in interest bearing securities of the value of $50,000, in trust for the benefit of my son Robert Lee Keith. . . . Said Fidelity Trust Company, as such trustee, shall invest said sum of money in sound securities bearing the highest rate of interest such investment will yield and shall pay to my son Robert Lee Keith, in monthly installments, such part or all of the interest earned by the principal sum . . . as the trustee in its discretion shall deem proper."

(This paragraph proceeds at some length as to the final disposition of this trust property, etc.) It is later specified that this son, Robert Lee Keith "shall not be entitled to nor receive any part of the estate except as provided" in this paragraph.

Paragraph 7 (immediately involved in this suit) devises, bequeaths and conveys "all the rest and residue of the property of which I may die possessed, real, personal and mixed . . . unto my son, Charles S. Keith and to said Fidelity Trust Company" (this defendant) "as joint tenants, and unto their successors hereinafter provided for . . . in trust for the following purposes: To hold, possess, manage, preserve and keep invested the same until my youngest child living shall be twenty five years of age." Then follow directions as to the disposition or distribution of the "entire net income" from the residuary estate during the period until the youngest child shall attain the age of twenty-five. Continuing this

paragraph specifies: "My said trustees are hereby invested with full power of disposition of said trust property, and every part and parcel thereof, within their discretion, and it is my desire and wish that all investments made by me shall remain as they are at the date of my death until such time as said investments, in the judgment of my said trustees, become unsafe, unprofitable or undesirable; but my said trustees, if they decide to change any investments made by me, or if they have possession of any residue of the income of my estate, shall invest the same in United States, State, County, municipal or school bonds, or in notes secured by first mortgages on real estate, which said mortgages shall not exceed two-thirds (2/3) of what said trustees shall consider the actual value of the real estate therein described. . . . When my said youngest living child shall be twenty-five (25) years of age, as aforesaid, the trust hereby created by this paragraph shall cease and determine, except as hereinafter provided, and the said trust estate created by this paragraph shall belong equally to my beloved wife, Mary L. Keith, and my children, Charles S. Keith, Margaret L. Hastings, Anna F. Koehler, Richard H. Keith, Jr., Virginia Keith, Emily Clara Keith and Mary Taylor Keith, share and share alike, and should any child or children be born to me after this date, or die before me leaving descendants, such child or children, or their descendants, *per stirpes*, shall share equally with my wife and children, above named, in said trust in this paragraph created. . . . It is, however, my wish, and I hereby direct and instruct the said Fidelity Trust Company, as sole trustee, (or its successor to be appointed by the court as hereinbefore provided) to retain, and I hereby bequeath and convey to it the legal title to one-half in value of the shares in my estate belonging or that will belong to my daughters, Virginia Keith, Emily Clara Keith, (the plaintiff) and Mary Taylor, and said half shares shall be by said trustee invested in safe securities, and the income thereof, at convenient periods, paid to my said daughters last named, so that the said income may be used and enjoyed by my said daughters last named for their own purposes, free from control or dominion of any other person or persons; and it is my further wish and command that no part of the principal or income of one-half in value of the shares in my estate of my daughters last named shall be paid to, or become liable for the debts or obligations of their husbands, or any other person. At the death of my said daughters last named, or at the death of either of them, this trust shall cease and determine as to her, and the one-half, in value, of their or her share in my estate shall descend as provided by the Statutes of the State of Missouri, unless my said daughters last named have disposed thereof by will."

Paragraph 8 (the concluding paragraph) appoints his wife, Mary L. Keith and son Charles S. Keith executors.

As stated Richard S. Keith died in 1903. His youngest child at-

tained the age of twenty-five years on July 8, 1913. So far as appears all that part of the residuary estate represented by corporate stocks, real estate, bonds or other such investments made by Richard H. Keith had, during the interim of approximately ten years, been preserved and retained by the joint trustees, Charles S. Keith and the trust company, intact and in kind, in accordance with testator's wish as expressed in the foregoing part of paragraph 7 of the will and the discretion therein vested in the joint trustees. After July 8, 1913, the residuary estate was distributed, in kind, according to the directions therefor in the will and as provided in the will "one-half in value," in kind, of the share in the estate belonging to each of the daughters Virginia Keith, Emily Clara Keith (the plaintiff), who was at that time Mrs. Fairleigh, and Mary Taylor was retained and held in trust by the trust company as sole trustee and treated as three separate trusts. The trust in "one-half in value" of Mrs. Fairleigh's share of the residuary estate only is involved in this suit. Mrs. Fairleigh's share of the Central Coal & Coke Company stock comprised 653 shares of the common stock and 261 shares of preferred. The defendant trustee retained 326 shares of common stock and 129 shares of preferred and 327 shares of the common stock and 132 shares of preferred were delivered to Mrs. Fairleigh. In the distribution of the residuary estate the stock of the Central Coal & Coke Company was listed at a value of $87 per share for the common stock and $80 per share for preferred and such stocks were retained at that valuation by defendant as trustee in the continuance of the trust created by paragraph 7. Presumably the same division of one-half in kind was made of all other corporate stocks, interests in real estate and other property composing the share of Mrs. Fairleigh in the residuary estate. No complaint is made as to the management by the trustee of any of the property composing the one-half in value of the share of Mrs. Fairleigh in the various properties constituting the residuary estate so received and held in trust by it except the shares of stock in the Central Coal & Coke Company and it is as to that property alone Mrs. Fairleigh, by her bill charges a breach of the terms of the trust.

Emily Clara Keith (plaintiff herein) became of full age in 1906, the residuary estate being at that time held in trust by her brother, Charles S. Keith and the trust company as joint trustees. In 1910 she married a Mr. Fairleigh. Her husband died in 1922. Two children were born of the marriage. One child died in infancy, the other, Virginia Lee Fairleigh, a minor, was the only living child at the time this suit was filed March 1, 1929. The daughter is joined with her mother as a party plaintiff on the theory that she has an interest in the subject matter of the suit as a contingent remainderman. There appears to be ample basis in the evidence to sustain defendant's contention that even if it be held that under the will it

was the duty of the defendant trustee to, within a reasonable time after July 8, 1913, sell the Central Coal & Coke Company stock and invest the proceeds in some interest-bearing security such as government or municipal bonds or like security nevertheless Mrs. Fairleigh fully acquiesced and consented to the holding of this stock by the trustee but if the minor daughter has such an interest as warrants her in maintaining the suit the conduct of Mrs. Fairleigh would not of course bar the daughter's rights. A controversy exists as to whether the daughter has such an interest as will allow her to maintain such a suit. However with the view we hold of the case it is unnecessary to either discuss or decide that question.

As indicated in the next preceding paragraph plaintiff's contention is that under the provisions of the will creating the trust it was the duty of the defendant trustee within a reasonable time after July 8, 1913, to sell all property at that time retained by it in trust as a part of the one-half in value of Mrs. Fairleigh's share in the residuary estate which was not at that time already invested in interest-bearing securities commonly referred to as legal securities, as government bonds, state and municipal bonds, or notes secured by first mortgage on real estate, and invest the proceeds in securities of that kind; that the trustee did not do so but held this Central Coal & Coke Company stock; that same has ceased for varying periods of time to pay dividends and the market value of the stock has depreciated hence this suit against the trustee.

We have heretofore noted that complaint is made only as to this particular stock, no complaint being made that the trustee continued to hold and did not sell the Louisiana & Texas Lumber Company stock; the interest in the Keith-Perry Building; the interest in the Keith homestead property or any other corporate stocks or real estate investments which were included in the trust property. Apparently these other investments, made by Richard H. Keith, have consistently produced an income satisfactory to Mrs. Fairleigh and though the trustee did not convert same into cash and reinvest as she now contends was its bounden duty under the provisions of the will she nevertheless approves the course pursued by the trustee. Likewise with full knowledge of the provisions of her father's will, fully aware of the values ascribed to and dividends paid upon the Central Coal & Coke Company stock and knowing that the trust company had not sold but continued to hold that part of such stock retained in trust for her she made no complaint thereof or objection thereto until shortly before the filing of this suit, a period of from fifteen to sixteen years. We do not refer to this by way of an estoppel but rather as indicating that the construction which she herself must have put upon the terms of paragraph 7 of the will coincided with the construction placed thereon by defendant trustee.

Defendant's position is that under the provisions of paragraph

7 it was called upon to exercise a sound discretion in the preservation and management of that part of Mrs. Fairleigh's property which it was directed to retain in trust and that it has faithfully discharged its duties as trustee. It will be noted that paragraph 7 places the entire residuary estate in trust, naming two joint trustees, the defendant being one. It is then specified that when the youngest child attains the age of twenty-five years the trust created "by this paragraph shall cease and determine *except* as hereinafter provided." (Italics ours.) The residuary estate is at that time to be divided in eight equal shares and distributed as there directed but the trust created by that paragraph is continued as to one-half in value of the shares of each of the three daughters with the defendant as sole trustee. The plaintiff disassociates and segregates the language directing the sole trustee to retain and continue to hold in trust one-half in value of the shares of the three daughters in the residuary estate and that same "shall be by said trustee invested in safe securities" from the other language of paragraph 7 and argues the matter as if the language reads that "said one-half shares be by said trustee" sold and the proceeds thereof "invested in safe securities" and then says the word "securities" cannot be construed to include shares of stock in a private manufacturing or mining corporation. We think the words "said one-half shares shall be by said trustee invested in safe securities" should be read and construed in conjunction with the other language of that paragraph relating to the retention of the investments made by the testator himself and which he wished preserved and kept intact unless in the judgment of the trustees provided for in that paragraph it became advisable to change the investment and is but a further admonition that the trust estate be at all times kept safely invested, the entire management and determination as to the advisability of any sale and reinvestment however being left to the discretion of the trustee. "While the word 'securities' construed strictly does not cover corporate stock but rather bonds or evidences of debt it has undoubtedly acquired a much broader meaning by general usage." [In re Stark's Will, 149 Wis. 631, 134 N. W. 389; In re Pierce's Estate, 177 Wis. 104, 188 N. W. 78.] Webster's New International Dictionary defines "securities" as evidences of debt or property as bonds or stock certificates. We think testator here used the word in this broad sense meaning thereby safe investments. Earlier in this paragraph he speaks of his various holdings in corporate stock, as well as other property, as investments. Here he refers to safe income producing securities while in paragraph 6 he sets up a trust of "$50,000 in cash or in interest bearing securities of the value of $50,000 . . ." said sum of money" to be invested by such trustee "in sound securities bearing the highest rate of interest such an investment will yield" and "such part or all of the interest earned by said principal

sum" to be paid by the trustee (this defendant) in its discretion to his son Robert Keith. Considering the nature and form of the property and investments composing the residuary estate and the expressed wish and purpose of the testator found in paragraph 7, taken as a whole, we think it was the intention of the testator in creating the trust set up that the trustees therein named, the joint trustees and later the sole trustee, should retain and preserve the investments which the testator had made until such time as, in the judgment of the trustees or trustee, such investment should "become unsafe, unprofitable or undesirable." Plainly testator reposed great confidence and faith in defendant trustee's discretion and judgment.

We are not dealing with the right of a trustee to, voluntarily and without direction or authorization in the instrument creating the trust, invest trust funds in the stock of a private corporation, or the propriety of such investment, but with the view we have indicated of the discretion vested by paragraph 7 of the will in the defendant trustee to manage and keep invested the property and investments, including these shares of corporate stock in question, comprising the trust estate, the inquiry is limited to whether under the facts shown the trustee in not selling the Central Coal & Coke Company stock and reinvesting the proceeds in some form of interest-bearing securities such as governmental or municipal bonds or real estate mortgages failed to exercise due diligence and a sound discretion. It is not alleged nor is there any evidence tending to show that the trustee at any time acted in bad faith.

Mrs. Fairleigh's father had served from the date of incorporation until his death as president of the Central Coal & Coke Company. He had made large investments in its stock and believed in the stability of the company as witness his request in paragraph 7 of the will that all investments which he had made "remain as they are at the date of my death." The company was outstanding in its field. Its officers and directors were recognized as men of business capacity and experience. Investment in stock of the company was considered by well-advised, prudent and conservative business men as a safe investment. The stock was not dealt in or considered as a speculative stock but rather as a sound investment. The preferred stock was a five per cent stock on the par value of $100; while the dividends declared on the common stock were on the basis of six per cent on the par value of $100. We have heretofore stated something of the nature and extent of the company's principal assets at the time of Richard H. Keith's death in 1903. It had been the policy of the company, which has, as we understand, at all times been consistently followed, to acquire and maintain reserves of coal and timber equal to and in fact generally in excess of timber cut and coal mined and in carrying out this policy a considerable portion of its earnings went "back into the property." Dividends were paid

quarterly. So far as appears from this record dividends had been regularly paid from and after the death of Richard H. Keith in 1903, to July 8, 1913, when the defendant continuing as sole trustee retained this stock in trust as a part of the one-half of Mrs. Fairleigh's share of the residuary estate. Such was the situation when defendant trustee retained these shares of stock as a part of the trust estate of Mrs. Fairleigh. Looking to the facts of the situation then existing, and in the light of the provisions of the will, we find nothing in the evidence tending to show that the retention of these shares of stock by the defendant trustee was contrary to that standard of judgment which an ordinarily prudent, diligent and intelligent man would exercise in his own like affairs. The quarterly dividends were paid on both the common and preferred stock until the last quarter of 1914 when no dividends were paid on the common stock and dividends were not thereafter resumed on the common stock until 1918. All quarterly dividends were then paid on common stock during the years 1918, 1919, 1920, 1921, 1922 (except one), and 1923 (except one). But one quarterly dividend was paid on common stock in 1924 and none thereafter to the date of trial. In 1921 the dividends paid on both common and preferred stock exceeded the usual six and five per cent respectively. All quarterly dividends were regularly paid on the preferred stock during the years 1913 to 1923 both inclusive. In 1924 only the first quarterly dividend was paid on preferred stock and none thereafter until the second quarter of 1929 when they were resumed and continued to date of the trial. The evidence was that this stock was not offered for sale on the open market nor sold or traded in as a speculative stock. There was a nominal market quotation which during this entire period fluctuated at around an estimated figure of $80 on preferred and $87 on the common stock. This quotation was not however based on actual sales. Some private sales were negotiated through brokers. We have already noted the extensive and valuable coal and timber properties and manufacturing plants owned by the company and its policy of acquiring and maintaining reserves to provide against depletion also the annual production in coal and lumber. Since 1902 the company has paid dividends in the sum of $8,000,000; the testimony however is that the earnings were much more than that, the amount in excess of dividends having been "put back into the property." In 1920 the gross earnings on coal alone was $1,800,000. In 1922 the book value of all the property of the company was shown as $10,000,000 but an appraisal made in that year fixed the actual value at $16,000,000. In 1923 the company was offered $7,000,000, the full amount of its capital stock, for its coal lands alone but the offer was refused by the board of directors. The testimony was further that at the present time, computed on the basis of the normal ratio of annual production, the

company has "a hundred years supply of coal and fifteen to eighteen years supply of timber;" that it "owns more timber in the south today than when we started" and in addition an extensive acreage of timber in the State of Oregon. During the entire time covered by the trust created by paragraph 7 from two to four of the directors of the defendant trust company were also members of the board of directors of the Central Coal & Coke Company. These men were fully cognizant of this trust and the terms and provisions thereof. They were also fully informed as to the property and assets of the company and the value thereof. It is significant that there is no least intimation that the failure to pay the dividends maturing after 1924 was in any way due to any mismanagement of the business or affairs of the Central Coal & Coke Company but the explanation thereof, which seems to be accepted and conceded, is the generally depressed business and economic conditions existing during that period in the coal and lumber industries. Mrs. Fairleigh's brother Charles S. Keith testified as a witness for defendant. He had been president of the Central Coal & Coke Company for twenty-three years next preceding the trial; had been thoroughly and intimately associated with the company and familiar with its assets and business for more than thirty years. He had also been a director of the defendant trust company since 1902. He owned a considerable block of stock in the Central Coal & Coke Company. He had never sold any of the stock which came to him in the distribution of his father's residuary estate nor any he had acquired otherwise. On the other hand he had from 1913 to 1929 been a purchaser of the stock as an investment, until in 1929 he owned more than three times the amount of stock which he owned in 1913. He further stated that from 1913 to 1930 such prices of the stock as were quoted upon the nominal market quotation lists did not represent or approximate the real value or asset value of the stock. That the real value was at all times two and one-half or three times that of such market quotations; that had the stock been sold in 1913 at the market quotations it would have been "a serious sacrifice;" that while at the time this suit was filed there was no market for this stock, "that is there are no purchasers for it," such situation was due wholly to the fact that the stock was not at that time paying dividends and not to any depreciation in the assets or properties of the company. H. F. Hall who had been a director of the trust company from 1911 to the time of trial and was also a director of the Central Coal & Coke Company in 1913 and some years thereafter stated he was familiar with the business and assets of the Central Coal & Coke Company. He considered the stock of the coal company a sound investment and during the period from 1913 to 1929 he had himself purchased stock of the coal company, steadily increasing his own investment therein, until his holdings in 1929 were more than five times that of 1913.

The then president of the trust company, Lester W. Hall, testified, that from 1916 to 1924 he had been vice president of the trust company and as such was immediately in charge of the trust department. (He became president in 1924); that during all that time he was familiar with the properties and assets of the Central Coal & Coke Company and had kept in close touch with its business and affairs; that during that period he had considered the stock a sound investment; that "from 1916" he "had a number of conversations with Mrs. Fairleigh" relative to the trust property and that she never made any complaint about the trust company holding the stocks of the Central Coal & Coke Company "until about the time this suit was filed." It seems Mrs. Fairleigh herself considered the stock to be a good investment. She never sold or attempted to sell any of the stock which she received as a part of the one-half of her share in the distribution of the residuary estate but instead between 1913 and 1929 bought additional shares and increased her investment therein. Further certain letters introduced in evidence tend to show that Mrs. Fairleigh placed the same construction upon paragraph 7 of the will which was given to that paragraph by the trust company as well as her confidence and faith in the soundness of the Central Coal & Coke Company stock. As the writer understands the only original investments made by the trust company had been the investment of some of the trust property or monies in notes secured by first mortgages on real estate and Mrs. Fairleigh in the course of time concluded she would prefer the investments so made in first mortgages be converted into Government Bonds. The letter from which we shall first and presently quote refers to such investments and also makes reference to stock of the Louisiana & Texas Lumber Company which the defendant trustee held in trust for Mrs. Fairleigh and which stock was retained and held by it in the same manner and under the same authorization as was this Central Coal & Coke Company stock. It will be recalled that at his death the testator owned one-third of the stock of the Louisiana & Texas Lumber Company. That company had been organized and incorporated in 1900. To the time of the execution of the will and the death of testator in 1903 that stock had not paid any dividends and it did not pay dividends until 1906. It is interesting to note that from 1906 until final liquidation of the Louisiana & Texas Company in 1926 it paid an average of five per cent monthly. However, though it is now claimed that under the will the trustee was not allowed any discretion in the matter but was required to sell all corporate stocks in 1913 and reinvest the proceeds in a certain type of interest-bearing securities such contention is made after the lapse of sixteen years only as to the Central Coal & Coke Company stock. Under date of February 19, 1923, Mrs. Fairleigh's attorney at her behest, and on her behalf, wrote the trust company as follows:

"Mrs. Emily K. Fairleigh informs me that the Louisiana and Texas Lumber Company contemplates selling some lands owned by it in the State of Texas, at an early date. She is of the opinion that as a stockholder of the company she will receive a certain portion of the proceeds derived from the sale of the land—I assume in dividends.

"Mrs. Fairleigh also informs me that you hold for her benefit some of the stock of the Lumber Company, and she requests me to state that she desires any sums that may come to her or for her benefit by virtue of this sale of land, should be invested by you in United States Government bonds.

"Mrs. Fairleigh also requests me to state that she is not satisfied with investments made by you for her benefit, and that she desires that you convert these investments into United States Government bonds. . . ."

To which the trust company replied under date of February 26, 1923, as follows:

"Your letter of February 19th in reference to the trust fund we hold for Mrs. Emily K. Fairleigh under the will of her father was duly received.

"We note that Mrs. Fairleigh is not satisfied with investments which we have made for her benefit and wishes us to convert these investments into Government bonds. We have no objections to doing so.

"Of course, this would not apply to securities which came to us from the estate of her father such as Central Coal & Coke Company stock. The will contemplates that we should hold such investments.

"If there is any particular issue of United States Government Bonds in which Mrs. Fairleigh would prefer to have us invest, we would like to be advised. When we receive any dividends from the Louisiana & Texas Lumber Company, we will be glad to invest the portion which we hold as representing principal in Government Bonds."

Under date of March 6, 1923, Mrs. Fairleigh's attorney writes the trust company:

"Referring to your letter of February 26, relating to investment of funds in your hands belonging to Mrs. William G. (Emily K.) Fairleigh, it is Mrs. Fairleigh's desire that you purchase Liberty Bonds of the fourth issue. I believe these bonds draw four and one-half per cent interest.

"Mrs. Fairleigh does not desire that you convert any of the securities which came to her from the estate of her father, such as Central Coal & Coke Company stock, etc. In other words, she does not desire that you in any way fail to comply with the provisions of the will of her father."

In 1924 Mrs. Fairleigh made a proposal, the details of which are

not material here, "to trade" her interest in the Keith & Perry Building as represented by certain certificates "for Central Coal & Coke Company stock and Liberty Bonds" held by the trust company in trust for her under the will. The trust company advised her that in its opinion it was not authorized to dispose of the Central Coal & Coke Company stock in that manner and that under the will even if it deemed it advisable to sell the coal company stock the purchase of her interest in the Keith & Perry Building was not such a reinvestment as the trustee was authorized by the will to make. It will be seen that thus as late as June, 1924, Mrs. Fairleigh was seeking to acquire in her own right the Central Coal & Coke Company stock held in trust for her and preferred it as an investment to the interest she owned in the Keith & Perry Building. On June 3, 1924, Mrs. Fairleigh wrote the trust company:

"Your letter of June second received in which you state you could not accept my proposition and in case you did sell my stock you could not reinvest in such securities as Keith & Perry Bldg. stock. I consider it a better investment than the notes the Fidelity bought where the people of whom you bought them could not pay their interest. But passing that by for the time being I wish to state should the Fidelity Trust deem it their duty to sell my Central Coal & Coke Co. stock I wish to say they are to sell it to me. I will have first chance to buy it as I do not wish it to go out of my possession."

Under date of June 5, 1924, the trust company replied:

"Duly received your letter of June 3, 1924. If the Fidelity National Bank and Trust Company as trustees under your father's will deems it advisable to sell the Central Coal & Coke Company stock held in your trust, we will give you an opportunity to buy it before we sell it to anybody else. Of course, we could not sell it to you for less then we could get for it from any one else at the time we wished to sell, but if you would be willing to pay as much as we could get for the stock from any one else, we would, of course, be glad to sell it to you."

No impeachment is made of the business acumen and sagacity of the officers and directors of the trust company nor as we have mentioned is their good faith questioned and it must be conceded that in the management of the trust they acted with an honest judgment. It appears that the trustee successfully and profitably managed and administered the trust as a whole. Certainly the trustee was not an insurer nor was it required to be infallible in its judgment or to possess and exercise powers of "prevision or prophesy" or anticipate events not generally looked for and the mere fact that the trustee's judgment was not fully vindicated by the course of subsequent events which were not discoverable by ordinary prudence, is not a showing that the trustee failed to exercise a sound

and reasonable discretion in the management of the trust. [Bowker, Trustee, v. Pierce, 130 Mass. 262; Green v. Crapo, 181 Mass. 55, 62 N. E. 956; In re Clark's Will, 257 N. Y. 132, 177 N. E. 397; Taylor v. Hite, 61 Mo. 142; In re Chapman (1896), 2 Ch. 763.] All that was required of this trustee under this will was that in the management of the trust property which it received it act with good faith and in the exercise of a reasonable discretion and such trustee "acting honestly, with ordinary prudence and within the limits of the trust" is "not liable for mere errors of judgment." [In re Chapman (1896), 2 Ch. 763.]

We conclude that the trial chancellor was right in holding that under the facts shown, the trustee acting in good faith reasonably exercised the discretion vested in it which is all the law requires. The judgment is therefore affirmed. *Sturgis* and *Hyde*, CC., concur.

PER CURIAM:—The foregoing opinion by FERGUSON, C., is adopted as the opinion of the court. All the judges concur, except *Hays*, J., absent.