G. A. BUDER v. R. WALDO HOLT, Commissioner of Finance of the State, and RALPH D. GRIFFIN, Special Deputy Commissioner of Finance of the State, in charge of the business and property of SCRUGGS, VANDERVOORT & BARNEY BANK, a Corporation, in liquidation, Appellants.—117 S. W. (2d) 235.

Division One, May 26, 1938.

*William T. Jones, David Baer, Jr.*, and *Carter & Jones* for appellants.

*E. E. Schowengerdt* and *G. A. Buder, Jr.,* for respondent.

668

BRADLEY, C.—Plaintiff and G. A. Franz were cotrustees and as such, placed $60,503.75 of the trust funds on time deposit in the Scruggs, Vandervoort & Barney Bank, St. Louis, and received a time certificate of deposit for said sum, issued to them as trustees. The bank failed and was placed in the hands of the Commissioner of Finance on January 14, 1933, with the trust fund on deposit. At

the time the bank closed, plaintiff, one of the trustees, individually owed the bank two notes, aggregating $45,000 principal. Plaintiff and his cotrustee unsuccessfully sought to get the trust fund deposit set off against the individual notes of plaintiff, but the commissioner refused to do this. The commissioner, however, approved the claim on the time certificate for its full amount as a general or common claim, and demanded payment of the notes and interest due thereon. Plaintiff then brought this suit in equity against the commissioner and his deputy, in charge of the bank, to compel the allowance of a sufficient sum from the time certificate of deposit to offset the sum due on the notes, and to allow as a general claim the balance due on the time certificate of deposit, and to return to plaintiff the notes marked paid.

The cause was submitted on an agreed statement of facts, and the court decreed as prayed for by plaintiff, and this appeal followed. The present commissioner has been substituted here as a party defendant in lieu of the commissioner at the time of appeal.

From the agreed statement it appears that: Plaintiff and G. A. Franz were named trustees in a trust estate created by Sophie Franz on January 30, 1909. The trust estate terminated upon the death of Sophie Franz, April 14, 1930, but the trustees have not been discharged because of "various and sundry matters" requiring their attention before the trust estate "can be finally wound up and the administration thereof completed." Under the trust instrument the trustees held certain property belonging to Sophie Franz individually, and certain property derived from the estate of Erhardt D. Franz, deceased, in which Sophie Franz had a life estate, the remainder interest being owned by certain named individuals and two estates of deceased persons.

June 16, 1910, the trustees gave a surety bond in the sum of $100,000 "for the use and benefit of any and all parties interested in the trust estate created by Sophie Franz . . . under date of January 30, 1909." The bond was executed by the American Bonding Company, as surety. This company was succeeded by the Fidelity & Deposit Company of Maryland. The condition of the bond was that the trustees "shall and will fully and faithfully account for all of the property which has heretofore come or which is now or which hereafter may come into their custody and possession as such trustees."

October 20, 1928, the trustees gave three additional bonds in the sum of $500,000 each, two of which have been reduced to $30,000 each, and the other to $50,000. The Fidelity & Deposit Company of Maryland was surety on these bonds, and the obligees, respectively, are "the estate and heirs of Walter G. Franz, deceased; the estate and heirs of Ernst H. Franz, deceased; and Ehrhardt W. Franz." (These

estate obligees are the two estates above mentioned as having a remainder interest in the property in which Sophie Franz had a life estate, and Ehrhardt W. Franz is one of the individuals.) The three bonds executed October 20, 1928, provided:

"Whereas, in the certain cause in equity, No. 6682, pending in the District Court of the United States in and for the Eastern Division of the Eastern Judicial District of Missouri, wherein Ehrhardt W. Franz is plaintiff and Gustavus A. Buder and others are defendants, a decree was filed and entered on the 5th day of May, 1927, ordering, adjudging and decreeing, among other things, that said (naming the obligee) was then the owner of an undivided one-tenth (1/10) interest in remainder, as vested remainderman under the last will of Ehrhardt D. Franz, deceased, in and to certain properties in the possession of Gustavus A. Buder and Gustav A. Franz, trustees, under and by virtue of a trust agreement dated January 30, 1909, and further that said (naming obligee) will be entitled to the *possession* of said remainder upon the death of Sophie Franz, life tenant of the said properties;

"Now, therefore, if the said G. A. Franz and G. A. Buder *shall*, upon the death of said Sophie Franz, *well and truly account for and pay over and deliver* to said (naming the obligee) according to the interests and right existing at the falling in of said life estate, said remainder interest in and to the stock, moneys and other property so in their *possession, according to law, and* according to the decree and mandate in said aforementioned cause and such other and further orders, decrees and judgments, if any, as may be hereafter made and rendered therein, then this obligation shall be null and void, otherwise to remain in full force and effect." (Italics ours.)

In a statement of final account filed in the Federal Court case on June 22, 1931, the trustees "accounted for" the time certificate of deposit "as an asset of the estate of Ehrhardt D. Franz, deceased;" and the "statement of account (with certain exceptions which are not here material) has been finally approved and adopted by the court as establishing the rights and interests of the remaindermen in the estate of Ehrhardt D. Franz, deceased."

The agreed statement of facts, after reciting as above stated, recites the facts pertaining to the deposit, etc., of the trust fund, all of which appears, supra.

 The general rule, absent the *personal* liability of the trustee for the trust funds, is that when trust funds are deposited in a failed bank, such funds cannot be set off against the individual indebtedness of the trustees to the bank. [Gansner v. Franks, 75 Mo. 64; Advance Exchange Bank v. Baldwin, 224 Mo. App. 616, 31 S. W. (2d) 96, l. c. 97; Mayer v. Citizens Bank of Sturgeon, 86 Mo. App. 422; Restatement of the Law of Trusts, p. 969; 5 Michie on Banks

and Banking, sec. 141, p. 269; 57 C. J., sec. 103, p. 453; 7 C. J., sec. 535, p. 745. See, also, notes 13 A. L. R. 324; 31 A. L. R. 756; 50 A. L. R. 632.]

However, a trustee who has "deposited trust funds in a bank in his own name as trustee for a named beneficiary may, upon the insolvency of the bank, set off such deposit against his individual note to the bank if he is personally answerable (to the beneficiary) for the amount of the deposit." [7 Am. Jur., sec. 481, p. 345; Funk & Son v. Young, 138 Ark. 38, 210 S. W. 143, 5 A. L. R. 79, and note; Coburn v. Carstarphen, 194 N. C. 368, 139 S. E. 596, 55 A. L. R. 819, and note.]

In view of the law as above stated, the decisive question in the present case is this: Is plaintiff *personally* liable to those who owned the beneficial interest in the trust funds on deposit in the failed bank? Plaintiff contends that he is, under the facts, personally liable. On the other hand it is contended that, since the time certificate of deposit was payable to "G. A. Franz and G. A. Buder, trustees," and no evidence tending to show negligence in depositing the trust funds, plaintiff is not *per se* liable. It will be observed that the decree of the Federal Court is that the remainderman was entitled to the *possession* of the remainder upon the death of Sophie Franz, and that the condition of the three bonds is that the trustees, upon the death of Sophie Franz, "shall well and truly account for and pay over and deliver to" the remainderman, the property in the possession of the trustees "according to law and according to the decree."

Plaintiff and his cotrustee are the judgment defendants in the decree, and are the principals in all the bonds, but if they are jointly liable to the beneficiaries for the time deposit, under the bonds, the statute, Section 2953, Revised Statutes 1929 (Mo. Stat. Ann., sec. 2953, p. 1820), makes them also severally liable. The court decree is that the remainderman (beneficiary) at the termination of the trust, which had then terminated, was entitled to the *possession* of the property which would include the trust funds on deposit.

Forrester v. Cantley, 227 Mo. App. 325, 51 S. W. (2d) 550, was submitted on an agreed statement of facts. It appears that Forrester, while circuit court clerk of Lawrence County, deposited official collections in the Mt. Vernon Bank. The account was on the books of the bank in the name of "M. H. Forrester, Circuit Clerk." The bank failed when there was a balance of $1543.67 in this account. The bank, at the time of closing, held Forrester's personal note for $400. The question was whether Forrester was entitled to a set off from his official deposit in a sum equal to the note and interest. The trial court held that Forrester was not entitled to such set off. On appeal, the Springfield Court of Appeals held that such set off

should be allowed. The question as to whether Forrester was *personally* liable for the deposit was not discussed. The opinion is based on the theory that the words "circuit clerk" following the name of Forrester, on the books of the bank, were mere *descriptio personae* (citing 18 C. J. 968), and that, as between Forrester and the bank, the relation of debtor and creditor (as to the deposit) existed and not that of trustee and *cestui que trust,* citing Paul v. Draper, 158 Mo. 197, 59 S. W. 77, 81 Am. St. Rep. 296, and cases following that case. The official bond in the Forrester case was conditioned that he "shall faithfully perform the duties of his office and pay over all moneys which may come into his hands by virtue of his office." But it does not appear in the Forrester case that the condition of the bond was considered of consequence upon the question there ruled. The statute (Sec. 11676, R. S. 1929, Mo. Stat. Ann., sec. 11676, p. 1803) requires a circuit court clerk to "keep a perfect account of all moneys coming into his hands on account of costs or otherwise, and punctually pay over the same." Regardless of the reason assigned for the result reached in the Forrester case (and we neither approve nor disapprove the reason assigned), a correct result was reached, because it was stipulated that Forrester "was liable on his official bond."

In Paul v. Draper, supra, Paul was guardian and curator of minors, and on April 11, 1896, deposited in the State Bank of Marshfield, Mo., a United States pension check for $1084.53, payable to "Thomas K. Paul, Guardian," and the deposit slip was issued to "T. K. Paul, Gdn.," but the "account was opened on the books of said bank in the name of T. K. Paul and said amount placed to his credit." Between the time of deposit and May 4th thereafter, Paul drew ten checks (in his own name, but for the use of his wards) aggregating $179.50. Shortly after May 4th, the bank failed, and made a general assignment (for the benefit of creditors) to Draper. At the time of the assignment there was a balance of $905.03 in the account. The suit was "to impress a trust (in the sum of the balance) upon the assets of the bank in the hands of the assignee in favor of plaintiff as guardian and curator" of the minors, and "to require the payment of the same as a preferred claim." In ruling the case the court said:

"Although the account was opened and kept and the checks thereon drawn in the name of T. K. Paul, the officers of the bank knew that the pension check was held by said Paul only as guardian and curator of said wards. No misappropriation of the fund of the wards was intended or effected by this manner of keeping the account, and there is no question but that at the date of the assignment the balance due thereon was a credit of the trust estate, and the case would have been the same, and may be treated as if the deposit had

been made, checked against, and the account kept, in the name of the plaintiff as guardian and curator of said wards. The real issue is between the plaintiff as such guardian and curator and the other creditors of the bank, and the question to be determined, whether his claim as such trustee for said balance is to be preferred to the claims of the other creditors of the bank in the distribution of its assets by the assignee.''

It was held in Paul v. Draper that the relation between Paul and the bank was that of debtor and creditor, and preference was denied. And as pointed out by the Court of Appeals in the Forrester case, the ruling in Paul v. Draper has been followed. [See State v. Lively, 311 Mo. 414, 279 S. W. 76; State ex rel. Attorney General v. Page Bank of St. Louis, 322 Mo. 29, 14 S. W. (2d) 597; Stephens v. Bragg City, 224 Mo. App. 469, 27 S. W. (2d) 1063; Ellington v. Cantley (Mo. App.), 300 S. W. 529.]

█ But even though it be that a preference would not be allowed as to the time deposit in the present case, such does not mean that plaintiff cannot have the set off, if he is individually liable for the time deposit.

To support the contention that plaintiff is not, under the facts, personally liable for the time deposit, defendants cite Fairleigh et al. v. Fidelity National Bank & Trust Co., 335 Mo. 360, 73 S. W. (2d) 248, 1. c. 256; In re Estate of Horner, 66 Mo. App. 531, 1. c. 536; State ex rel. Swan v. Taul, 228 Mo. App. 204, 65 S. W. (2d) 1049, 1. c. 1051. The Fairleigh case did not involve trust funds caught in a failed bank, but did involve the careful management of the trust funds. In that case the court said (335 Mo. 1. c. 374, 73 S. W. (2d) 1. c. 256): ''Certainly the trustee was not an insurer, nor was it required to be infallible in its judgment or to possess and exercise powers of 'prevision or prophecy' or anticipate events not generally looked for and the mere fact that the trustee's judgment was not fully vindicated by the course of subsequent events which were not discoverable by ordinary prudence, is not a showing that the trustee failed to exercise a sound and reasonable discretion in the management of the trust.''

In the case of In re Estate of Horner, supra, the plaintiff, Payne, was executor, and as such, he received on March 1, 1893, a draft for $800 belonging to the estate, and he, in his own name, deposited this draft in the Bank of Commerce at Springfield, Missouri. He received a time certificate of deposit and at the time of the deposit he told the cashier that ''the money belonged to an estate of which he was administrator; that he wanted to draw interest and would need it to make his final settlement, just when he could not say.'' The cashier replied that ''the deposit, if left for twelve months, draw six per cent, if left six months, five per cent interest; and that

it could be drawn out in either six or twelve months." The bank, when the deposit was made, was solvent and in good repute, but failed on July 13th thereafter. Payne received·on the deposit a twenty per cent dividend from the failed bank,·and in his settlement in the probate court was allowed credit for $662.31, the amount lost. The circuit court on appeal disallowed this credit, and the St. Louis Court of Appeals affirmed the judgment of the circuit court. In the course of the opinion the court said (66 Mo. App. 1. c. 536): "It was his duty to take the certificate of deposit in his name as executor. If this had been done, no question could have arisen as to the fairness of the transaction nor as to his right to a credit for the unforeseen failure of the bank."

State ex rel. Swan v. Taul, supra, was on the bond of a trustee· who had placed $1600 on time deposit in a bank that failed. The time certificate was issued to "Robert C. Taul, trustee." The condition of the bond was that the trustee "shall faithfully execute said trust according to law under the terms of said trust." A demurrer to the petition was sustained and on appeal the action of the trial court sustaining the demurrer was affirmed. In the course of the opinion (65 S. W. (2d) 1. c. 1051) the court said that there was no allegation of negligence, and "no statement of fact that places any liability based upon the principal's knowledge or opportunity of knowledge concerning the condition of the bank. It therefore follows that for us to hold plaintiff's petition as stating a cause of action against the defendants on the bond, we must do so by declaring the acts of the principal as above set out as breach thereof, as wrongful *per se.*" The court declined to so hold, citing and quoting from the case of In re Estate of Horner, supra.

In the present case, there is nothing in the agreed statement of facts as to negligence on the part of the trustees in placing the trust funds in the bank, and if plaintiff is *personally* liable, it is under the bonds above mentioned. The condition of the bond executed June 16, 1910, which "is still in effect," according to the agreed statement, was that the trustees "shall and will fully and faithfully account for all of the property which has heretofore come or which is now or which hereafter may come into their custody and possession as such trustees." The condition of each of the three bonds executed October 20, 1928, was that the trustees "shall well and truly account for and pay over and deliver. . . ." (We have for convenience here repeated these conditions.) State ex rel. McKown v. Williams et al., 77 Mo. 463, was a suit on a bond in the sum of $8000, executed by a guardian in this State (in addition to the usual guardian's bond) so as to enable him to get possession of assets belonging to his wards, which assets were tied up in a chancery court in the State of Tennessee. The condition of the bond was that the guardian

"shall well and truly account for and pay over such estate or sums of money as shall be received by him in the State of Tennessee to" the wards, naming them, or their heirs, etc. By means of this bond the guardian received from the chancery court in Tennessee $900 belonging to his wards. He charged himself with this money in his settlement in the probate court in this State, but did not pay it over to the wards. The suit was to the use of one of the wards for her part of this money.

In ruling the McKown case the court said (77 Mo. l. c. 471): "The learned counsel for appellants suggest that when the guardian charged himself with the wards' money obtained in Tennessee, in his annual settlements, that was a compliance with the conditions of the bond; the breach assigned in the petition being a failure, etc., 'to account for' this money. This is not all that is embraced in this term 'account for.' It is a condition not satisfied short of paying over the trust fund to the *cestui que trust.*" The inference in the McKown case is that the guardian breached his duty as such, and used the trust fund himself.

In State ex rel. Elberta Peach & Land Co. v. Chicago Bonding & Surety Co., 279 Mo. 535, 215 S. W. 20, it appears that the suit of Boyd, admx., v. Elberta Peach & Land Co. was pending, and that one Haydel was appointed receiver to take charge of the properties of the peach company. The bonding company was surety on the receiver's bond, which was conditioned that he "should faithfully obey such orders as the court might make in relation to said trust and should faithfully and truly account for all moneys, assets, property and effects that should come into his hands and possession and should in all respects perform all the official duties of said receivership." Receiver Haydel converted to his own use $8,036.87 of the trust funds. Another receiver was appointed and suit was brought on Haydel's bond, and a judgment on the bond was affirmed. The court said (279 Mo. l. c. 551-552, 215 S. W. 20): "It was Haydel's duty on the termination of his authority, and after his death, that of his executor or administrator, to 'account for' the assets that had come into his hands as receiver. This was his duty under the law and it was a condition of the bond, and to 'account for' is a condition not satisfied short of paying the fund into court or according to the court's order," citing State ex rel. McKown v. Williams, supra.

It was further held in State ex rel. Peach Co. v. Chicago Bonding & Surety Co., 279 Mo. l. c. 553, 215 S. W. 20, that "the contract of suretyship (there involved) is inherently that of insurance. The surety is an insurer of the debt, the fidelity, or the undertaking of his principal (Pingrey One Suretyship and Guaranty, sec. 2), and when he engages in the business of furnishing surety for hire, his obligation is no longer construed under the *strictissimi juris* rule, but

is subject to the rules of construction applicable to insurance policies generally. So that, speaking generally, the contracts of suretyship issued by surety companies, organized for the purpose of furnishing surety for hire, such as the defendant, are contracts of insurance. In current decisions dealing with such contracts the courts continually refer to them indifferently as 'bonds,' 'indemnity contracts,' 'insurance bonds,' 'insurance contracts' and 'guaranty policies,' '' citing Roark v. City Trust, Safe Deposit & Surety Co. et al., 130 Mo. App. 401, 110 S. W. 1; Boppart v. Illinois Surety Co., 140 Mo. App. 675, l. c. 683, 126 S. W. 768; Rule v. Anderson and National Surety Co., 160 Mo. App. 347, 142 S. W. 358; St. Louis Police Relief Assn. v. Am. Bonding Co., 197 Mo. App. 430, 196 S. W. 1148; State ex rel. Matter v. Ogden, 187 Mo. App. 39, 172 S. W. 1172; Remington v. Fidelity Dep. Co., 27 Wash. 429; People ex rel. Kasson v. Rose, 174 Ill. 310, 51 N. E. 246; Industrial & General Trust v. Tod, 67 N. Y. Supp. 362; People ex rel. Gosling v. Potts, 264 Ill. 522, 106 N. E. 524; Am. Bonding Co. v. Morrow, 80 Ark. 49, 96 S. W. 613. [See, also, Goffe v. National Surety Co., 321 Mo. 140, 9 S. W. (2d) 929; Union Trust Compay v. Wyatt (Mo.), 58 S. W. (2d) 708.]

What is said in State ex rel. Peach Co. v. Chicago Bonding & Surety Co., supra, relative to surety bonds being insurance contracts is primarily based on the statute, now Section 5795, Revised Statutes 1929 (Mo. Stat. Ann., p. 4431), which section is a part of Article VI, Chapter 37, dealing with insurance, other than life insurance. Section 5795 sets out the necessary requisites for a surety company, before such company can engage, in this State, in the writing of surety bonds.

It will be observed in the Peach Company case that the trustee embezzled the trust fund, and that there was no question about his breach of trust. We find no case, and our attention has not been called to any case, holding, under facts such as here, where there is no evidence of a breach of trust, that the principal and his surety under the usual fidelity bond are *insurers* of the trust fund, regardless of a breach of trust on the part of the trustee. Surety bonds might be so written, but there is nothing in the present record to justify such construction of the bonds here concerned.

We are constrained to rule, under the facts here and under the law as we read, that the judgment should be reversed, and it is so ordered. *Ferguson* and *Hyde, CC.*, concur.

PER CURIAM:—The foregoing opinion by BRADLEY, C., is adopted as the opinion of the court. All the judges concur.