St. Louis Union Trust Company, as Trustee Under the Will of Martha Plant McCormick, (Plaintiff) Respondent, v. Alby Easton McCormick Toberman et al., Defendants, Joseph Thomas Toberman, a Minor, by George S. Roudebush, His Guardian Ad Litem, (Defendant) Appellant.—140 S. W. (2d) 68.

St. Louis Court of Appeals. Opinion filed May 7, 1940.

Motion for rehearing denied May 21, 1940.

*Bryan, Williams, Cave & McPheeters* for respondent.

*Samuel A. Mitchell* and *Richard D. Shewmaker, Amici Curiae.*

*George S. Roudebush* Guardian *ad litem* for Joseph Thomas Tober-man, a minor.

562

BENNICK, C.—This is a suit brought by St. Louis Union Trust Company, as trustee under the will of one Martha Plant McCormick, seeking the instruction of the court with respect to the mode or character of the investment that it may be permitted to make of a portion of the funds of the trust estate created by said will.

The testatrix, Martha Plant McCormick, died on October 21, 1925, leaving the will in question in which plaintiff, St. Louis Union Trust Company, was named as executor.

Under the terms of the will, the residue of the estate remaining after the disposal of the testatrix' personal effects was left to plain-

tiff to be held by it in trust for the use and benefit of the testatrix' daughter, Alby Easton McCormick (now Alby Easton McCormick Toberman), with the provision that after the payment of the necessary expenses incident to the care and management of the trust estate, the trustee should use and apply the entire net revenue derived therefrom for the education and maintenance of the testatrix' daughter until she should attain her majority, and thereafter, so long as she might live, should pay to her the entire net revenue derived from the trust estate in monthly or quarterly installments.

The will further provided that upon the death of the testatrix' daughter, the trust should cease, and the trust estate then remaining in the hands of plaintiff as trustee should pass to the daughter's descendants, if any; that if she should die without leaving a descendant surviving, then the trust estate should pass to the testatrix' husband, if he should be living; and that if he should not be living at the death of the daughter without issue surviving, then and in that event, at the daughter's death, the trust estate should pass to such persons as she might by her last will appoint to receive the same, and in the absence of any such appointment, to the testatrix' own heirs at law.

So far as concerns the matter of directions to the trustee regarding the management and investment of the funds comprising the trust estate, the testatrix merely provided by her will that the trustee "shall hold and manage the trust estate herein created, with full power to sell, transfer, convey, encumber, lease or otherwise deal with the same and every part thereof, in like manner as I might do if living, and to invest the proceeds thereof in such property or securities as in its judgment will yield a safe and regular income, and to change investments and make new investments from time to time as it may deem necessary and proper."

Following completion of the administration of the estate, plaintiff entered upon the performance of the trust created, and has ever since been paying the income from the trust estate to the beneficiary, Alby Easton McCormick Toberman, in accordance with the direction of the will.

It appears from the evidence that as of September 10, 1937, shortly prior to the time of the trial, the principal of the trust estate consisted of bonds of a total par value of $49,250; United States Treasury notes in the amount of $900; and $38.50 in uninvested cash. The bonds were railroad, public utility, industrial, and first mortgage real estate in character; and while, as we have indicated above, their aggregate par value was $49,250, it was shown that their actual market value was only some $38,000, due to the fact that certain of the issues, which had seemingly been a part of the original estate, were in default in the matter of interest payments. It was also shown that the estimated annual income from the estate as of the date stated was the sum of $1102.38.

Being desirous (so it seems to be agreed) of effecting an increase in the income of the trust estate without incurring any reasonably anticipated risk of loss of principal, Alby Easton McCormick Toberman, the beneficiary, wrote plaintiff on February 25, 1937, requesting it to invest, out of the funds held by it as trustee under the will of Martha Plant McCormick, the sum of $8000 or more in such common and preferred stocks as it might deem to be a desirable investment, and also to invest, out of such trust estate, the sum of $8000 or more in a common investment fund which it appears that plaintiff was proposing to create and operate for the joint account and benefit of the numerous trust estates of which it was acting as trustee or cotrustee.

Solicitous for the interests of both the beneficiary and of those entitled to the remainder of the estate upon the termination of the trust, and being in doubt as to its right, in the proper performance of its function as trustee, to make the type and character of investments thus requested of it by the beneficiary, plaintiff thereafter brought this suit whereby it prays the court to instruct it:

First, whether it may properly invest any portion of the funds of such trust estate in "seasoned preferred and common stocks, of companies with regular earnings and paying regular dividends, which may reasonably be expected to continue, and which stocks are of such kind and character that prudent men in the community are accustomed to purchase same when making investments of their savings with a view to their safety;" and,

Second: Whether it may properly invest any portion of the funds of such trust estate in "a common trust investment fund, in the operation of which the Trust Company (plaintiff) will take funds from various separate trust estates, of which it is trustee, and invest them in securities proper for the investment of trust funds, and issue to the several separate estates from which such trust funds are taken certificates representing their proportionate interest in the common fund, and record such interests in the plaintiff's books in the separate accounts of the several trust estates participating in said common trust investment fund; in the conduct of said common investment trust fund no securities will be sold to or bought from the common investment fund by the plaintiff; records are to be kept in such a way that the principal, income, profits, losses, and charges of each separate trust estate participating in the fund can always be properly allocated; the plaintiff will not itself in anywise participate in said common trust investment fund; the plaintiff will make no charge whatever for its services in handling the common trust investment fund."

The persons named as defendants to the suit in addition to Alby Easton McCormick Toberman, the life beneficiary, were Joseph Thomas Toberman, the minor son and only descendant of Alby Easton McCormick Toberman, who was joined both individually and as rep-

resenting all those who might become entitled to share in the remainder of the estate after the termination of the trust upon the death of the life beneficiary; and also the unknown persons who might possibly be entitled to take, either under any will that might be executed by Alby Easton McCormick Toberman, or as heirs of the testatrix, whose husband, Harry J. McCormick, is no longer living.

Personal service was had upon Joseph Thomas Toberman, the minor defendant, for whom a guardian *ad litem* was duly appointed, while as to the unknown parties who were joined as defendants, service was had by publication.

Defendant Alby Easton McCormick Toberman answered, praying the court to construe the will of Martha Plant McCormick, and to order, adjudge, and decree that plaintiff, as trustee of the trust estate created by said will, be authorized to invest a portion of the funds of said estate in accordance with the proposal for which it sought the instruction of the court.

Defendant Joseph Thomas Toberman answered by his guardian *ad litem,* stating that he had no knowledge or information relative either to the degree of safety with which plaintiff might be permitted to invest a portion of the funds of the estate in accordance with its proposal, or to whether such an investment might be expected to produce a larger income; and calling upon plaintiff for strict proof of all the allegations contained in its position.

At the trial of the case, a considerable volume of evidence was introduced by plaintiff concerning the relative merits of stocks and bonds as trust investments, with a view, in either instance, to safety of principal, a reasonable return, proper diversification, and some degree of marketability, which were said to constitute the primary requisites for a trust investment. Accompanying plaintiff's case, in aid of the testimony given, were numerous exhibits which plaintiff had prepared, consisting of surveys over a ten-year period of the activities of the most popular stocks and bonds dealt in by the investing public, showing their comparative earnings and high and low quotations for that period, and tending to establish, in line with plaintiff's proposal, that it might, if permitted to do so, very readily invest a portion of the funds in seasoned preferred and common stocks so as to provide an income larger by some $160 to $200 a year for the life beneficiary, while at the same time providing all reasonable safety to the principal of the estate, which might indeed be expected to be increased thereby.

No evidence was offered on behalf of the defendants.

Following the completion of the hearing, the court entered its decree, finding the facts to be as alleged in plaintiff's petition, and adjudging and decreeing that plaintiff, as trustee, was authorized and empowered to invest, at any time, and from time to time, any funds of said trust estate, first, ''in corporate preferred and com-

mon stocks, provided, however, that it shall exercise reasonable care in the selection of such stocks as are to be purchased;" and second, "by paying them into a common trust investment fund, or similar fund under some different name or style, in the operation of which said St. Louis Union Trust Company will take funds from various separate trust estates of which it is sole trustee or cotrustee with others and invest them in securities proper for the investment of the funds of the several trust estates participating in said common trust investment fund, and issue to the several separate trust estates from which such trust funds are taken certificates representing their proportionate interest in the common trust investment fund and record such interests in the books of St. Louis Union Trust Company in the separate accounts of the several trust estates participating in such common trust investment fund, in the conduct of which said common trust investment fund no securities will be sold to or bought from said common trust investment fund by the St. Louis Union Trust Company, and of which said common trust investment fund records are to be kept in such a way that the principal, income, profits, losses, and charges of each several trust estate participating in the common trust investment fund can always be properly allocated, in which common trust investment fund the St. Louis Union Trust Company will not, itself, in anywise participate, and said St. Louis Union Trust Company will make no charge whatever for its services in handling said common trust investment fund."

From the decree so rendered, defendant Joseph Thomas Toberman, the remainderman, alone sued out his appeal, which was allowed to the Supreme Court, evidently upon the theory that the amount in dispute between the parties brought the case within the pecuniary limits of that court's appellate jurisdiction. The Supreme Court found, however, that appellate jurisdiction was properly vested in this court, and consequently ordered that the cause be transferred here. [St. Louis Union Trust Co. v. Toberman (Mo.), 134 S. W. (2d) 45.]

Appellant, who, as remainderman, is of course primarily concerned with the safety and preservation of the principal of the estate rather than with any question of a present increase of the income therefrom, assigns error to the decision of the court, both as it authorizes plaintiff to invest funds of the estate in corporate stocks both common and preferred, and also as it authorizes plaintiff to invest funds of the estate in a proposed common trust fund.

So far as concerns the direction contained in the will, that is, to invest the proceeds of the trust estate in such "property or securities" as in the trustee's judgment will yield a safe and regular income, it may be said, and the parties indeed concede, that the will neither limits nor extends the discretion which a trustee normally possesses with respect to the nature of the investment he may make. In other

words, while it is not pretended by appellant that the will, by its terms, expressly prohibits plaintiff from investing the funds of the estate in corporate stocks or in a common trust investment fund, neither is it claimed by plaintiff that the will, by its terms, is sufficiently explicit to authorize it to make such type of investment unless the same are to be considered proper for the investment of trust funds generally, so that, in the final analysis, the question resolves itself into one of whether, under the facts and circumstances of the case, the character of investment for which plaintiff seeks the court's instruction and permission would be proper, having due regard for securing a fair income from the estate for the benefit of the life beneficiary, while at the same time taking reasonable precautions towards preserving the principal of the estate for the ultimate benefit of the remainderman.

As a fundamental proposition, it is the duty of a trustee, in the investment of trust funds committed to his care and keeping, to exercise such care and diligence as men of ordinary prudence, intelligence, and discretion would employ, not with a view to speculation, but rather with a view to the permanency of the investment, considering both the probable income and the probable safety of the capital invested. This does not mean, however, that a trustee shall invariably have the unlimited authority to invest trust funds as an ordinarily prudent and diligent man might invest his own funds, since an ordinarily prudent man may, and frequently does, invest his own funds with the idea and hope of accumulation, and at the risk which such intent imposes. A trustee, on the contrary, may take only such risks as an ordinarily prudent man would take in the investment of the funds of others, bearing ever in mind that it is the preservation of the estate, and not an accumulation to it, which is the chief object and purpose of his trusteeship. [Cornet v. Cornet, 269 Mo. 298, 190 S. W. 333; 65 C. J. 795, 796.]

In many jurisdictions the question of the nature of the investments that a trustee may make of trust funds in his possession has come to be explicitly regulated by statute, but such is not the case in our own jurisdiction, save as respects the inhibition placed upon the right of any trust company to invest trust funds held by it in its own capital stock. [Sec. 5423, R. S. Mo. 1929 (Mo. Stat. Ann., sec. 5423, p. 7631.] Otherwise the statute merely provides, as regards the investment of trust funds by trust companies, that "all investments made by any trust company of money received by it in any fiduciary capacity shall be at its sole risk, and for all losses of such money the capital stock and property of the company shall be absolutely liable, unless the investments are such as are proper when made by an individual acting in such fiduciary capacity, or such as are permitted under and by the instrument or order creating or defining the trust."

Neither is there any decision in our own State which purports to

arbitrarily classify, define, or limit the character of investments that a trustee may or may not make for his estate, so that in the determination of the case at bar, we are necessarily relegated to the broad and basic question of whether plaintiff, acting with due prudence and discretion, and with a view, not to speculation, but to the security of the principal and the production of a reasonable income therefrom, may properly be permitted to invest in the character of investments which the life beneficiary has requested of it, and which it has expressed its own willingness to make, if so instructed by the court.

Apart from the requirement of statutes which have been enacted in many of the States, and in the absence of any specific authority conferred by the instrument creating the trust, there would seem to exist two rules having to do with the general investment powers of trustees, the one, the New York, or more strict, rule, which holds that a trustee may not invest trust funds in common or preferred stocks, and permits investment only in government securities and first mortgages on real estate; and the other, the Massachusetts, or more liberal, rule, which permits the reasonable investment of trust funds in corporate stocks, where the corporations have acquired, by reason of the amount of their property and the prudent management of their affairs, such a reputation for safety and stability that cautious and prudent persons commonly invest their own money in such stocks as permanent investments. [65 C. J. 799, 804, 805.]

Under neither rule is speculation permitted, just as our own courts have consistently and uniformly emphasized in cases involving the propriety of particular trust investments; and while there are many respectable jurisdictions which have followed, and are still following, the New York rule, so pronounced has been the general trend by statutory enactments and otherwise towards the more liberal viewpoint embodied in the Massachusetts rule, that in the Restatement of the Law of Trusts, sec. 227(1), p. 651, the law is said to be as follows:

"The purchase of shares of preferred or common stock of a company with regular earnings and paying regular dividends which may reasonably be expected to continue is a proper trust investment if prudent men in the community are accustomed to invest in such shares when making an investment of their savings with a view to their safety."

As we view the situation, not only do reason and experience establish the soundness of the above statement of the law, but indeed a proper conception of judicial power and authority would hardly warrant a court in holding otherwise. By this we mean that a court, within the limits of its prerogatives, deals with the question of due prudence and good faith when it is called upon to determine whether, in a particular case, a trustee has faithfully and properly discharged his trust in the matter of the investment of the funds committed to his care, and it therefore has no function to perform with respect to arbi-

trarily classifying and defining the character of investments which he may make for his estate, unless it can say, from the evidence before it, that a particular type of security or investment is improper as a matter of law. On the contrary, if there is to be an arbitrary classification of the character of investments that a trustee may be permitted to make for his estate, the making of such classification would seem to be purely a legislative, and not a judicial, function, and the courts, unless they are to be guilty of judicial legislation, should do as they have heretofore consistently done in this State, which is to determine each individual case that arises upon the merits of the particular investment made.

With the true judicial function thus kept in mind, we know of no reason why a court, having due regard for the present economic, financial, and industrial structure of our nation, should attempt to say, as a matter of law, that corporate stocks, as such, can never be a proper form of investment for money held in trust. We appreciate that many years ago there may have been sound reason for a holding to the contrary. Then corporations were in their infancy, and at that time a contemplated investment in such new and unproved enterprises necessarily involved a contemplated investment of a more or less speculative nature. Now, however, there are many corporations in the land with years of good management and demonstrated stability and earning capacity behind them, in the stocks of which the most prudent and cautious persons are accustomed to invest their savings with a primary view to the safety and permanency of their investments.

It is true that the purchase of shares of stock of a corporation represents the purchase of an interest in the business, and it is also true that bonds, for which appellant contends as the more proper form of trust investment, may have a specific security not found in the case of shares of stock. However, as said in the Restatement of the Law of Trusts, sec. 227(e), p. 647, "it is not ordinarily the duty of a trustee to invest only in the very safest and most conservative securities available," since it is not alone his duty to use reasonable care and prudence to preserve the trust estate for the remainderman, but also to make it fairly and reasonably productive for the benefit of the life beneficiary, who, indeed, is closer in point of relation to the creator of the trust than is the one who is nominated to receive what remains upon the termination of the trust.

Many considerations, including the necessity for reasonable diversification of investments, impel the conclusion that seasoned corporate stocks are not, as such, improper as a form of investment for money held in trust. Of course, all stocks are not good, as many persons have learned to their disadvantage, and neither would all bonds be a proper form of trust investment. As we have already pointed out, whatever form the investment may take, whether in bonds, or

stocks, or what not, the ultimate question is whether, under the facts of the particular case, the trustee has exercised due care and prudence in making the investment he has selected. In the instant case, not only does the evidence show, but it is a matter of common knowledge, that prudent and cautious persons are accustomed to invest their own savings in seasoned corporate stocks with a view to the safety and permanency of their investments, and there is no sound reason why greater apprehension should be felt in the case of a corresponding investment of the funds of others. The evidence shows that it is plaintiff's intention to be extremely cautious and discreet in carrying into effect any authorization of the court; and on the whole record, we see no warrant for disturbing the instruction of the court permitting plaintiff to invest "in corporate preferred and common stocks, provided, however, that it shall exercise reasonable care in the selection of such stocks as are to be purchased."

This brings us then to the remaining proposition in the case of whether plaintiff should be permitted to invest a portion of the estate in question in a common trust investment fund created out of funds belonging to the particular estate and other estates of which plaintiff is trustee, with such common fund maintained in such a way that the assets of any trust estate contributing to it can be at all times distinguished from the assets of other trust estates similarly participating, and also maintained and conducted in such a way that plaintiff itself will have no participation therein.

The practical advantages of such a fund, especially in the case of the smaller trust estates, are at once obvious and manifest, while the objections to it are in many respects more technical than real.

The chief advantages claimed and shown for such a fund are increased diversification of investment, together with greater efficiency and economy in operation. The smaller the trust estate, the less opportunity there is for proper diversification where the funds of each estate are required to be invested separately; and the less diversification there is, the greater is the resulting opportunity for loss in the case of unanticipated and unforeseen happenings which may serve to affect the value of securities. But with a common trust investment fund in operation in which the several trust estates may participate, it is—possible to enlarge the field of legitimate trust investment, thus securing substantial benefits for each separate trust estate which would not be otherwise possible, while at the same time preserving for each of such estates the identical management which the creator of the trust selected.

While there are statutes in some states affecting the question, our own state has none, nor do we know of any local decision dealing with such a proposal.

Although the decisions in the country at large would seem to be at

odds upon the question, in the Restatement of the Law of Trusts, sec. 227(j), p. 650, the rule is said to be as follows:

"The mere fact that trust funds are combined . . . with funds of other trusts in making investments does not necessarily make the investments improper, provided that the investments are in other respects proper. Thus, an investment of trust funds in a participating interest in one or more mortgages on land, or in a group of securities which are all proper trust investments, may be a proper trust investment. Such investments are not proper if they are not such as a prudent man would make of his own property having primarily in view the preservation of the estate and the amount and regularity of the income to be derived . . ."

Similarly, it is said in 65 C. J. 812, by way of recognition of the fact that such a form of investment is not necessarily beyond the power of the trustee of a trust estate, that "when trust funds are combined for a single investment, the instrument acknowledging and securing the investment, or some contemporaneous instrument, should show the several interests."

The commingling of trust funds with funds belonging to the trustee individually would always be subject to condemnation, but no such result would obtain in the case of the proposed common trust investment fund, in which plaintiff itself would have no participation. True, the funds of many trust estates would be employed as contributions to the common fund, but the accounts of each would be kept entirely separate, and each would be given credit for its own proportionate interest in the whole.

It is pointed out by appellant that instances might occur where, in the performance of one trust, all estates participating in the fund might suffer in more or less degree, due to the fact that while the respective accounts would be kept separate, the investments themselves could not be separated, so that, absent some effective measure of prevention, each trust estate would be require to suffer a portion of the hazards of the others. The answer to this is that while such situations might conceivably arise, yet on the whole the risk of loss would be distinctly less than under the system whereby the funds of each individual estate are in all events required to be separately invested. Indeed, the idea of a common trust investment fund has been worked out by men highly skilled in the handling of trust estates, and is offered by them as the most effective solution found for a condition which has lately become unusually acute on account of the difficulty of finding suitable investments in small amounts.

Other objections are pointed out, none unsurmountable in their nature, which, to the extent that they are meritorious, must be worked out and obviated by plaintiff before it undertakes to exercise the authority granted it by the terms of the decree below.

One matter urged by appellant with some seriousness is that while

572

plaintiff itself may have an adequate system for keeping separate accounts of the respective interests in such a fund, the rule laid down in this case will govern the conduct of all trustees, some of whom may lack plaintiff's facilities for the proper operation of such a fund. The answer to this is that for any lack of due care and diligence, the trustee may always be called upon to respond; and if some persons who hold themselves out for the transaction of this type of business are better equipped than others for the proper performance of their duties, then the person who sets out to create a trust must exercise a due measure of precaution on his own part in the selection of the one to whom he is to convey his estate in trust.

It is also suggested that if trustees are to be authorized to invest trust property in a common trust investment fund, the Legislature, and not the courts, can most effectively grant the authority. This is no doubt true so far as defining any specific plan or system is concerned; and if the Legislature, in its discretion, should ever see fit to enact a statute covering the matter, nothing said in this opinion could possibly stand in the way.

Considering the case from all the aspects noted in the able briefs of counsel, it seems proper that the judgment rendered by the circuit court should be affirmed, and the Commissioner so recommends.

PER CURIAM:—The foregoing opinion of BENNICK, C., is adopted as the opinion of the court. The judgment of the circuit court is, accordingly, affirmed. *Hughes, P. J.,* and *Becker* and *McCullen, JJ.,* concur.