The FIRST NATIONAL BANK OF KANSAS CITY, Missouri, Caroline Hyde Swift and Florence Hyde Frazier, Trustees under the Last Will and Testament of Arthur M. Hyde, deceased, Respondents,

v.

Hortense C. HYDE, Samuel Hyde Swift (a minor), Anne Hathaway Swift (a minor), Laurance M. Hyde, Ben C. W. Hyde, Jr., Ira B. Hyde, III, all individually and as representatives of all future contingent beneficiaries under the Last Will and Testament of Arthur M. Hyde, deceased, Defendants,

Caroline Hyde Swift and Linda Caroline Hryniewicz, Appellants.

No. 48770.

Supreme Court of Missouri,

Division No. 2.

Dec. 11, 1962.

Motion for Rehearing or for Transfer to Court En Banc Denied Jan. 14, 1963.

Michael J. Trombley, Columbia, for appellants.

Richard B. Taylor, Chillicothe, Lawrence R. Brown, Kansas City, for respondents, Stinson, Mag, Thomson, McEvers & Fizzell, Kansas City, of counsel.

STORCKMAN, Judge.

This appeal grows out of an equitable action brought by three trustees for the construction of a provision of a testamentary trust and for the interim approval of their account as trustees. The trial court after a hearing construed the trust and approved the accounting. Within thirty days there-

after the trial court, at the instance of the income beneficiary, who is also one of the trustees, set aside the decree insofar as it approved the trustees' account and permitted objections to be filed to certain items of the accounting. Another hearing was then had and the trial court again approved the accounting in all respects and granted other relief to the trustees. The income beneficiary and her daughter, the ultimate beneficiary of the corpus of the trust, have appealed. The appellants contend that the corporate trustee breached its trust and should be required to return to the trust fund the sum of $20,243.39 received by it as trustee fees.

Arthur M. Hyde, a former governor of this state, died testate and his will was admitted to probate in Grundy County, Missouri, on October 23, 1947. Article Sixth of his will bequeathed all his stock to three individuals as trustees for the use and benefit of the testator's wife, Hortense C. Hyde, for and during her natural life, and at her death for the use and benefit of the testator's daughter, Caroline Hyde Kelly, for and during her natural life, and at her death for the use and benefit of Linda Caroline Kelly, a granddaughter of the testator, until her thirtieth birthday at which time the trust was to terminate and the corpus thereof was to be distributed to the granddaughter free from trust. If Linda was not living on the day when she would have become thirty years of age, then the trust property was to be distributed to the heirs of her body, and if she died without such heirs then the trust property goes to the heirs of the testator, determined as of the date that Linda would have attained the age of thirty years. In the event of the death or disability of a trustee, the remaining trustees were authorized to name a successor and record the appointment in the office of the clerk of the Circuit Court of Grundy County, Missouri. The testator's daughter, Caroline Hyde Kelly, was designated as a successor-trustee in the event as many as three vacancies occurred.

No assets came into the hands of the trustees until March 1953 at which time all

three of the trustees originally named had declined to serve. The duly-appointed and acting trustees then were The First National Bank of Kansas City, Missouri, a corporation, Hortense C. Hyde, the testator's widow, and Caroline Hyde Swift, the testator's daughter, formerly Caroline Hyde Kelly. Thereafter, on November 23, 1953, Mrs. Hyde resigned as trustee and was succeeded by her niece, Mrs. Florence Hyde Frazier. When the trust came into the possession of the trustees in March 1953, it consisted entirely of shares of common stock having a market value of $596,200. Differences arose almost immediately between the corporate trustee (herein sometimes referred to as the "Bank") and Mrs. Swift with respect to investment policy. Mrs. Swift contended that the trust property should be kept invested entirely in common stock. On the other hand, the Bank took the position that it was the duty of the trustees to diversify the holdings and that a portion of the trust estate should be converted in other kinds of investments. Some bonds and debentures were acquired until an impasse was reached by reason of Mrs. Swift's refusal to agree to the further purchase of bonds, and particularly bonds of the United States Government or U. S. Treasury Notes. As a result of the deadlock, a considerable amount of principal cash accumulated in the trust estate during the latter part of the period in question. Nevertheless, at the time of the trial in June 1960, the market value of the trust estate had increased to $1,047,427.

On August 29, 1958, Mrs. Hyde, the testator's widow, executed and delivered to the trustees a written renunciation of her right to receive the income from the trust estate for the remainder of her lifetime, and the question then arose as to whether the daughter, Mrs. Swift, was entitled to succeed Mrs. Hyde as the income beneficiary. A construction of the trust instrument in this respect was the subject matter of the first count of the equity action filed by the three trustees on March 13, 1959, in the Circuit Court of Grundy County. The second count was for approval of the interim accounting of the trustees. The defendants in the action were Mrs. Hyde and Mrs. Swift, individually, Linda Caroline Hryniewicz, formerly Linda Caroline Kelly, and other individuals as representatives of all the future contingent beneficiaries under the last will and testament of Arthur M. Hyde, deceased. The answers of the defendants generally admitted the allegations of the plaintiffs' petition or called for strict proof thereof.

A hearing was had and on April 20, 1959, the trial court entered its decree instructing the trustees to pay over and deliver to Mrs. Swift, as successor to her mother, the trust income accrued on and after September 1, 1958, subject to the provisions of the testamentary trust. In accordance with the prayer of count 2 of the petition, the decree approved the statement of assets and the interim accounting of the trustees and all acts and conduct on the part of the trustees in connection with the administration of the trust to January 15, 1959, the date of the interim accounting. Thereafter, on May 16, 1959, the individual defendants, Mrs. Hyde, Mrs. Swift, and Linda Caroline Hryniewicz, filed a joint motion requesting the court to set aside of its own motion the decree insofar as it related to count 2 of the petition. The motion alleged that there were substantial errors in the accounting. Pursuant to the motion the court vacated this part of the decree on May 16.

Thereafter, on September 23, 1959, the corporate trustee filed its motion for acceptance of its resignation as co-trustee, and prayed that its final accounting be approved and that it be allowed its fees and expenses, including reasonable attorneys' fees. The resignation and other exhibits attached to the motion tended to show the existence of a controversy between Mrs. Swift and the Bank over investment policies and a desire that the Bank resign as trustee when Linda, the granddaughter of the testator, would become twenty-one years of age on September 9, 1958, in order to make it possible for Linda to be appointed as a trustee. The

Bank indicated a willingness to resign sooner but agreed to stay on until Linda attained her majority. Thereafter, on July 29, 1958, Mrs. Swift wrote the Bank saying it was desirable for the Bank to stay on for another year. Mrs. Swift and Linda filed a joint answer to the Bank's motion for acceptance of its resignation. This and an amended or supplemental answer sought to surcharge and falsify the account especially with regard to the Bank's fees and expenses.

Thereafter, on June 11, 1960, Mrs. Frazier filed her resignation as co-trustee and a motion for its acceptance stating that she had become a nonresident and praying that she be released from all obligations and duties and all liability under said trust, that the interim accounts during the period of movant's term as a trustee and the trustees' final accounting be approved, and that the management of the trust during the period of the movant's term be approved and confirmed as in accord with the law and the terms of the trust.

At the four-day hearing in June 1960, the Bank and Mrs. Swift were the only parties that appeared and presented evidence. After the cause had been submitted to the court, Mrs. Swift without benefit of her counsel wrote a letter to the court in which she requested the court "to hear more evidence in this case, to reopen the case, to call for more evidence, or to do whatever, in the Court's judgment, is best in order that the whole case may still be a matter of record." This motion in letter form occupies 133 pages of the transcript of the record on appeal and contains much that is irrelevant to any proper issues in the case.

The decree of the trial court on November 30, 1960, denied Mrs. Swift's request to reopen the case, accepted the resignation of the Bank and appointed Linda in its place, accepted the resignation of Mrs. Frazier and appointed Michael J. Trombley in her stead, approved the settlement of the trustees and overruled all objections thereto, and allowed certain fees and expenses and directed their payment out of the trust estate.

Thereafter, the Bank filed a supplemental accounting covering the period to December 8, 1960, to which Mrs. Swift and Linda filed objections. Thereafter, the attorneys who had represented Mrs. Swift and Linda at the trial filed their request for leave to withdraw from the case and were permitted to do so. On March 10, 1961, the trial court having considered the objections to the supplemental statement of assets and interim accounting overruled them and approved and confirmed the accounts and further instructed the Bank that during the further pendency of the case in the trial court or on appeal the co-trustees shall invest and keep invested in short-term obligations of the United States of America that part of the corpus of the trust now held in cash. The motion of the defendants Caroline Hyde Swift and Linda Caroline Hryniewicz for new trial was overruled on March 13, 1961, and they appealed.

The case was tried without a jury and the trial court was indulgent as to the admission of evidence and properly so. The transcript of the record consists of two large volumes. The Bank identified and offered sixty exhibits, and Mrs. Swift forty-six. Some of the exhibits were quite extensive. Mrs. Swift introduced in evidence the printed record of hearings before the Finance Committee of the United States Senate held in the summer of 1957 entitled, "Investigation of the Financial Condition of the United States". This record consisted of three volumes and aggregated 1606 pages. A great deal of the record is taken up with the attempt by Mrs. Swift to show by evidence aliunde that her father's intent was that the trust assets should be invested only in shares of common stock. This she undertook to do chiefly by extensive cross-examination of the Bank's witnesses, by letters exchanged between her father and the Bank regarding investments in other trusts, and by her own oral testimony as to what her father taught her concerning his in-

vestment policies, which in brief outline was that he was opposed to investing in any kind of bonds or obligations having a fixed value payable in dollars because the United States had gone off of the gold standard in 1933 and since then had engaged in deficit spending and credit regulation, and that for these and other reasons inflationary conditions were prevalent in this country which made it inadvisable to invest in anything but common stock, sometimes referred to as equities. This sort of evidence cannot be considered in ascertaining the settlor's intention as to the trustees' rights and duties with respect to the investment of trust funds.

In determining the meaning of a trust provision, the paramount rule of construction is that the settlor's intent is controlling and such intention must be ascertained primarily from the trust instrument as a whole. Nelson v. Mercantile Trust Co., Mo., 335 S.W.2d 167, 173 [6]; Old Folks Home of St. Louis County v. St. Louis Union Trust Co., Mo., 313 S.W.2d 671, 678 [6]; St. Louis Union Trust Co. v. Herf, 361 Mo. 548, 235 S.W.2d 241, 247 [4]; State ex inf. Miller v. St. Louis Union Trust Co., 335 Mo. 845, 74 S.W.2d 348, 358 [13].

Statements by the settlor of the trust of his intentions are not ordinarily admissible, whether the trust is created by a will or instrument inter vivos. Section 474.320 RSMo 1959, V.A.M.S.; Scott on Trusts, Vol. II, § 164.1, p. 1158; Restatement of the Law, Trusts 2d, Vol. I, § 4c, p. 14, and § 53, p. 130.

Letters written to the Bank by Mr. Hyde containing statements about investment policies contrary to the settlor's intention expressed in the will are not admissible in evidence and cannot be considered in ascertaining the settlor's intention. Crist v. Nesbit, Mo.App., 352 S.W.2d 53, 56 [2].

Where as here the trust estate is created by will, the trustees must look to the will for its powers in the execution of the trust and the management of the trust estate. Loud v. St. Louis Union Trust Co., 313 Mo. 552, 281 S.W. 744, 754 [2]; St. Louis Union Trust Co. v. Ghio, 240 Mo. App. 1033, 222 S.W.2d 556, 560 [1]; 90 C.J.S. Trusts § 247, pp. 225, 229; 50 Am. Jur., Trusts § 307, p. 243.

Article Sixth (a) of the will deals with the investment powers of the trustees. It provides in part that the trustees "shall be and they are hereby fully authorized and empowered to retain and continue to hold as investments of said trust estate any stocks which belong to me at the time of my death, or they may sell said stocks or any part thereof and reinvest the same in other stocks or securities or invest said stocks or the proceeds therefrom in other stocks or in other securities or in any other investments, and for the purpose of so doing my said trustees may sell or dispose of said stocks in any manner so as to enable them to keep said trust estate invested in proper stocks, securities or investments." Clearly the trustees were authorized to retain stocks held by the testator at the time of his death or they could sell "said stocks or any part thereof and reinvest" the proceeds. A trustee would not be justified in continuing to hold an investment made by the settlor if sound business judgment dictated that it should be disposed of and the proceeds reinvested unless the trust instrument contained a positive direction that such investment must be retained. Such is the holding in Loud v. St. Louis Union Trust Co., 313 Mo. 552, 281 S.W. 744, 754 [1], which states: "The fact that the investment was originally made by the testatrix herself and came to defendant as a part of her estate did not justify defendant in retaining the investment, if sound business judgment prompted its sale and reinvestment in other profitable and reasonably safe securities, absent, of course (as in this case) a positive direction in the will that the investment must be continued by the trustee." There was no such mandatory provision in the Hyde trust so the trustees were free to

sell any stock if its retention did not reasonably appear to be justified. The most troublesome difference between Mrs. Swift and the Bank was what kind of investment should be made with the proceeds of stock sold.

Article Sixth (a) further provided that the trustees could invest estate funds "in other stocks or in other securities or in any other investments". And they were finally admonished "to keep said trust estate invested in proper stocks, securities or investments." The Bank contends that the word "securities" is at least comprehensive enough to include bonds, while Mrs. Swift in her brief urges that "securities" means "different types of stock or equities such as preferred stock or convertible debentures to the settlor", and that the word "bond" would have been used if intended. The appellants contend that the use of these terms creates an ambiguity as to the investment powers of the trustees. The rules of construction applied to wills generally are also used in the case of testamentary trusts. Section 474.430 RSMo 1959, V.A.M.S.; Higbee v. Brockenbrough, Mo., 191 S.W. 994, 996 [4].

A testator is presumed to know and intend the legal effect of the language he uses in a will. Gehring v. Henry, Mo., 332 S.W.2d 873, 876 [3]. Where the language used is clear and of well-defined force and meaning, it must stand as written and extrinsic evidence of what was intended in fact cannot be adduced to qualify, explain, enlarge, or contradict the language. In re Sidebottom's Estate, Mo., 327 S.W.2d 270, 278 [10]; Gehring v. Henry, Mo., 332 S.W.2d 873, 876 [4]; Schubel v. Bonaker, Mo., 331 S.W.2d 552, 556 [8, 9]. The evidence aliunde adduced by Mrs. Swift tends to contradict and destroy the unambiguous grant of investment powers contained in Article Sixth (a) of the will. The language used has a well-defined meaning and in these circumstances the intention of the trustor must be determined from within the borders of the will.

The broadest of the descriptive terms used in Article Sixth (a) is "investment" which is defined in Webster's Third New International Dictionary as: "1a: an expenditure of money for income or profit or to purchase something of intrinsic value * * * 2: the commitment of funds with a view of minimizing risk and safeguarding capital while earning a return—contrasted with *speculation*". The same work defines "security" as: "a written obligation, evidence, or document of ownership or creditorship (as a stock, bond, note, debenture, or certificate) giving the holder the right to demand and receive property not in his possession". Sometimes the term "securities" is used with the meaning of bonds or debentures as contrasted with stock. Commissioner of Internal Revenue v. Neustadt's Trust, 2 Cir., 131 F.2d 528, 529. See also Fairleigh v. Fidelity National Bank & Trust Co., 335 Mo. 360, 73 S.W.2d 248, 252, and 79 C.J.S. Security; Securities, p. 947. On the other hand, the Securities Act of 1933, Title 15 U.S.C.A. § 77b(1), p. 199, and the Securities Exchange Act of 1934, Title 15 U.S.C.A. § 78c(10), p. 362, gives the term "security" a much more comprehensive definition including, inter alia, stock, bonds and debentures.

The meaning intended by the testator or settlor must be arrived at by taking into account also the context in which the word is used. The ancillary powers granted in the latter part of Article Sixth (a) (following the part quoted above) also refers to stocks, securities and investments in various combinations. We hold that the terms "securities" and "investments" as used in Article Sixth (a) were broad enough to include bonds (state, federal or municipal), U. S. Treasury notes, and debentures. The trustees did not breach their trust as to the kind or character of investment they were authorized to make.

None of the pleadings of Mrs. Swift or any other defendant charges the Bank with fraud or chicanery. Furthermore, during the trial, counsel for Mrs. Swift stated that there was no charge of malice on the part

of the trustees and further asserted that the charge was a failure to act as reasonable prudent investors by selling off a part of the common stock.

Mrs. Swift complains of acts of the Bank as trustee which conflicted with her ideas and distressed her, but which resulted in no loss or damage to the trust estate. For instance, she asserts that Bank officers led her to believe that their usual investment policy was not to have more than fifty percent of a trust estate in common stocks "give or take a little". The evidence demonstrates that this alleged formula was not applied to the Hyde trust. Actually about eighty percent of the market value of the trust assets remained in common stock at all times; the other twenty percent was chiefly in convertible debentures and preferred stock of private corporations. No long-term government bonds were purchased. On occasions short-term U. S. Treasury Notes were purchased when reinvestments could not be agreed upon. When Mrs. Hyde was receiving the income, a tax-exempt municipal bond was purchased in order to minimize her personal income taxes. This was a bond of a school district in Gasconade County, purchased for $4938.21 and which yielded a return slightly in excess of two percent. When the Bank would not agree to invest more of the trust funds in common stocks, Mrs. Swift suggested the purchase of Swiss francs or gold bullion, and at another time inquired about loaning the money on real estate in the Virgin Islands in preference to the U. S. Government issues or other fixed value securities. To these suggestions, the Bank would not agree. Such complaints present no grounds for redress.

■ The trustees were under a duty imposed by Article Sixth (a) to invest the trust funds in *proper* stocks, securities or investments. In this situation, the applicable standards are well stated in St. Louis Union Trust Co. v. Toberman, 235 Mo.App. 559, 140 S.W.2d 68, 72, as follows: "As a fundamental proposition, it is the duty of a trustee, in the investment of trust funds committed to his care and keeping, to exercise such care and diligence as men of ordinary prudence, intelligence, and discretion would employ, not with a view to speculation, but rather with a view to the permanency of the investment, considering both the probable income and the probable safety of the capital invested. This does not mean, however, that a trustee shall invariably have the unlimited authority to invest trust funds as an ordinarily prudent and diligent man might invest his own funds, since an ordinarily prudent man may, and frequently does, invest his own funds with the idea and hope of accumulation, and at the risk which such intent imposes. A trustee, on the contrary, may take only such risks as an ordinarily prudent man would take in the investment of the funds of others, bearing ever in mind that it is the preservation of the estate, and not an accumulation to it, which is the chief object and purpose of his trusteeship. Cornet v. Cornet, 269 Mo. 298, 190 S.W. 333; 65 C.J. 795, 796." See also Therrien v. Mercantile-Commerce Bank & Trust Co., 360 Mo. 149, 227 S.W.2d 708; Fairleigh v. Fidelity National Bank & Trust Co., 335 Mo. 360, 73 S.W.2d 248; and 90 C.J.S. Trusts § 247d, p. 238.

■ The appellants contend that the will as a whole showed that diversification of investments was not required, that the law did not require it, and that the Bank breached its duty in so doing. Restatement of the Law, Trusts 2d, § 228, p. 541, states the prevailing rule as follows: "Except as otherwise provided by the terms of the trust, the trustee is under a duty to the beneficiary to distribute the risk of loss by a reasonable diversification of investments, unless under the circumstances it is prudent not to do so."

The appellants direct our attention to provisions of the will which give other designated property outright to the testator's widow, his daughter, his son-in-law and other specific legatees, whereas all of his

stocks were put in trust. The effect of this, the appellants contend, was to release the trustees from any requirement to diversify trust investments. The value of the other property is not shown but even if we assume it to be substantial the contention is without merit. The trustees cannot be charged with keeping abreast of the changing financial condition of the other legatees or devisees in order to determine what investment should be made. Their care and management of the trust assets are controlled by the expressed purposes of the trust instrument and not by extraneous matters. The trustees did not breach a duty by undertaking to diversify trust investments.

We find no merit in appellants' contention that the Bank breached its duty by using uninvested funds for its own profit and not for the benefit of the estate. The evidence demonstrates that the Bank was at all times willing and urging that the cash principal be invested in proper securities. Mrs. Swift would not even permit it to be put in short-term U. S. treasury bills.

Nor is there any merit in the contention that the Bank failed to carry a proportionate share of the burden of selecting proper trust investments. The Bank had custody of the securities, collected and disbursed the income, made investments when permitted to do so, and prepared the accounts. The Bank's evidence tended to show that the trust account received attention regularly from trust officers, and a formal review was made annually by the investment committee. The appellants make much of the fact that some members of the committee had not read the trust instrument but there was no showing that they were not familiar with its contents or that a failure to read it had prejudiced the estate in any manner. The evidence showed that the trust officers were men experienced in making investments and had access to current investment information. The evidence tended to show that Mrs. Swift's unyielding antagonism to fixed value securities, especially government issues, and her refusal to recognize and conform to the prevailing standards for trust estate investments imposed an additional burden on all concerned including herself. But it cannot be said on the record before us that the Bank shirked any of its duties as one of the trustees.

The appellants assert that the Bank did not sustain the burden of proving the relief requested but cites no cases in this respect. The principal relief it obtained was approval of its management and accounting in the trust estate. The presumption is that a trustee has acted in good faith and has done his duty, and the burden is on the one attacking his accounts and seeking to establish a breach of trust to prove the contrary. Offenstein v. Gehner, 223 Mo. 318, 122 S.W. 715, 716 [1]; Boland v. Mercantile-Commerce Bank & Trust Co., 349 Mo. 731, 163 S.W.2d 597, 606 [8].

Paul Bakewell, a St. Louis lawyer, chiefly engaged in the trust, probate, tax, corporation, and real estate practice, testified on behalf of Mrs. Swift that he had examined the accounting of the trustees. After he testified that in his opinion an investment by a trustee in a fixed value security would be imprudent, he was asked by the court to point out the investments in the trustees' account that he thought were imprudent. After further examination, Mr. Bakewell designated the Gasconade County School bond, three purchases of treasury certificates, and the cash on hand as the only improper investments.

"Where discretion is conferred upon the trustee with respect to the exercise of a power, its exercise is not subject to control by the court, except to prevent an abuse by the trustee of his discretion." Restatement of the Law, Trusts 2d, § 187, p. 402. See also Bolles v. Boatmen's National Bank, 363 Mo. 949, 255 S.W.2d 725, 732 [9], and Bakewell v. Mercantile Trust Co., Mo., 319 S.W.2d 600, 605 [5]. We find no abuse of discretion on the part of the trustees in any respect challenged by the appellants.

Since we have examined all of appellants' charges and find that the Bank has not committed any breach of trust, it follows that it is entitled to its fees and expenses in the amount shown by the evidence to be reasonable and proper. Bolles v. Boatmen's National Bank, 363 Mo. 949, 255 S.W.2d 725, 736 [18].

The judgment is affirmed.

All the Judges concur.