Emanuel TELLER, Appellee,

v.

Lee I. KAUFMAN and Jeane K. Susman, Appellants.

No. 19620.

United States Court of Appeals, Eighth Circuit.

April 30, 1970.

Gerald A. Rimmel, Susman, Willer, Rimmel & Elbert, St. Louis, Mo., for appellants.

Hugo M. Walther, Thompson, Walther & Shewmaker, St. Louis, Mo., for appellee; Landman Teller, Teller, Biedenhard, Rogers & Marcus, Vicksburg, Miss., were with him on the brief.

Before MATTHES, BLACKMUN and BRIGHT, Circuit Judges.

BLACKMUN, Circuit Judge.

In this diversity case we are called upon to construe the trust provisions, particularly Article II C(2), of the last will and testament dated February 27, 1957, of Nora Kaufman, deceased. Miss Kaufman, a single woman in her seventies, died in 1959 domiciled in Missouri and without issue.[1]

When the testatrix' will was executed in February 1957, there were then living (a) Lee I. Kaufman and Jeane K. Lewin (now Jeane K. Susman), the defendants here, who are children of Nora's theretofore deceased brother Ben; (b) Nora's older and unmarried sister Frances; (c) Nora's older and only married sister Beckye K. Teller; and (d) Beckye's two sons, Emanuel Teller, who is the plaintiff here, and Dann K. Teller. Thus at that time Nora had two living siblings (Frances and Beckye); a nephew and niece (Lee and Jeane) who were children of a deceased sibling (Ben); and two nephews (Emanuel and Dann) who were children of a living sibling (Beckye). Lillian, another unmarried sister of Nora, had died without issue prior to 1957.

The dispositive provisions of Nora's will are:

"ARTICLE I. I give, devise, and bequeath to my sister, FRANCES KAUFMAN, if she survives me by sixty (60) days, all of my property of every kind and description.

"ARTICLE II. If my sister, FRANCES KAUFMAN, shall fail to survive me by sixty (60) days but my sister, BECKYE TELLER of Vicksburg, Mississippi, should survive me by sixty (60) days, then and in that event I give, devise, and bequeath all my property of every kind and description to my Trustee hereinafter named, IN TRUST, however, upon the terms and conditions, for the uses and purposes, and with the powers and duties hereinafter enumerated:

"A. My Trustee shall pay all of the income of the trust estate to or for the benefit of my sister, BECKYE TELLER, so long as she may live beginning as soon as possible after my death.

"B. My Trustee may encroach upon the principal of the trust estate at any time and from time to time to meet any need, emergency, or special requirement of my sister, BECKYE TELLER, including the cost of her last illness, funeral, and burial.

"C. Upon the death of my sister, BECKYE TELLER, my Trustee shall pay and deliver:

"(1) Five Thousand Dollars ($5,-000) to my nephew, LEE I. KAUF-

---

1. The record does not disclose the exact date of death.

MAN, in appreciation of the assistance he has given to me and to my sister over the years;

"(2) The balance of the principal and any accumulated income of the trust estate in equal shares *per stirpes* among such of my nephews and niece, JEANE K. LEWIN, LEE I. KAUFMAN, DANN K. TELLER, AND EMANUEL TELLER, as may then survive.

\* \* \* \* \* \*

"ARTICLE III. If neither of my sisters, FRANCES KAUFMAN and BECKYE TELLER, should survive me by sixty (60) days, I give, devise and bequeath all of my property of every kind and description to the persons in the proportions specified in Paragraph C of Article II above."

Frances, although living at the execution of Nora's will, died prior to Nora's death and without issue.

On Nora's death her will was duly admitted to Missouri probate. Lee, who was named as executor in the will, served in that capacity without compensation. In view of Frances' prior death, the will's Article I was not effective. Beckye survived Nora by more than 60 days. Thus Article III of the will also was ineffective. The disposition of Nora's estate, therefore, was governed by Article II. The testamentary trust which that Article called for was established in due course. Lee served as trustee, apparently without compensation.[2]

Dann died February 21, 1963, without issue. His mother Beckye, the life beneficiary of Nora's testamentary trust, survived Dann.

Beckye died August 31, 1967. On her death the trust terminated. The plaintiff Emanuel (Beckye's then sole surviving child) and the defendants Lee and Jeane (Ben's son and daughter) were the only persons of the four named in Article II C(2) who were still living at the trust's termination. The $5,000

trust legacy prescribed by Article II C(1) has now been paid to Lee. No one questions the propriety of that payment. It is the division of the residue of the trust estate among the testatrix' niece and two nephews which is in controversy.

Emanuel takes the position that he is entitled to half the residue and that his cousins Lee and Jeane are entitled to share only the other half equally, thus making the distributive shares 50%, 25% and 25%, respectively. Emanuel instituted this suit to establish his right to the 50% share. The defendants Lee and Jeane take the position that they and Emanuel share the entire residue equally, each taking one-third. The amount in controversy is, for Emanuel, the difference between one-half and one-third, or one-sixth, of the residue, and, for each of Lee and Jeane, is the difference between one-fourth and one-third, or one-twelfth, of the residue. The sum involved exceeds the minimum amount specified by 28 U.S.C. § 1332(a) for federal diversity jurisdiction. Diversity of citizenship is also established.

Certain additional facts were brought out in evidence presented by the defendants. Much of this evidence was admitted over the plaintiff's objection. We recite these facts for background and for what they may be worth, and we do so without passing upon the issue of the admissibility of the evidence:

1. Nora, Frances and Lillian had lived together for many years in a Saint Louis apartment. The three women were spinsters and, with an occasional exception, were not remuneratively employed. Their brother Ben, who died in March 1947, for many years contributed $100 each month to their support. After Ben's death an insurance policy he had purchased on his own life provided them $75 each month; Lee then contributed the remaining $25 needed to continue the $100 precedent.

---

2. The testatrix' will named Lee as trustee but provided that an individual serving as trustee thereunder "shall receive no compensation for his services \* \* \*."

2. Beckye resided in Mississippi. Emanuel lived in Louisiana. Lee had his home in Saint Louis County, Missouri, and thus was close to the sisters. Jeane also lived in Saint Louis County.

3. Neither Emanuel nor Dann contributed anything to the sisters' support.

4. Nora's will was drawn by a Saint Louis lawyer. In February 1957, at their request, Lee called the lawyer to draw wills for Nora and Frances. The attorney consulted the sisters on February 18. During his conversation with Nora he made notes. In those notes appears the phrase, "In trust for Beckye —after Beckye, to nephews and niece equally". An initial typed draft of the will had Article II C(2) as follows:

> "The balance of the principal and any accumulated income of the trust estate in equal shares *per stirpes* among my nephews and niece, Jeanne K. Lewin, Lee I. Kaufman, Dann K. Tiller, and Emanuel Tiller."

In this draft, however, the attorney, in longhand, inserted the words, "such of" and "as may then survive", which appeared in the final draft of Article II C(2), and made the corrections in the spelling of the names. In response to the question as to why he added the words "as may then survive", the lawyer testified:

> "Well, it would be my memory that language of this type was inserted to recognize the possibility that one of the nephews and nieces might predecease the life tenant of the trust."

Chief Judge Harper ruled in Emanuel's favor. Teller v. Kaufman, 293 F. Supp. 1397 (E.D.Mo.1968).

▮ Some well-established and undisputed general principles are applicable but, as is usual, may not be particularly helpful: (1) "The construction of wills is essentially a state-law question * * *". Evans v. Abney, 396 U.S. 435, 444, 90 S.Ct. 628, 633, 24 L.Ed.2d 634

(1970); Lyeth v. Hoey, 305 U.S. 188, 193, 59 S.Ct. 155, 83 L.Ed. 119 (1938). (2) Missouri law applies, for Missouri is the state where the testatrix resided and was domiciled and where the trust property had its situs. Brenneman v. Bennett, 420 F.2d 19, 22 (8 Cir. 1970); Bingen v. First Trust Co., 103 F.2d 260, 264 (8 Cir. 1939). (3) The "rules of construction applied to wills generally are also used in the case of testamentary trusts". First Nat. Bank of Kansas City v. Hyde, 363 S.W.2d 647, 653 (Mo. Sup.1962). (4) "In determining the meaning of a trust provision, the paramount rule of construction is that the settlor's intent is controlling * * *." First Nat. Bank of Kansas City v. Hyde, supra, 363 S.W.2d at 652. V.A.M.S. § 474.430[3] is a statutory recognition of the controlling nature of the testator's intent. (5) "When the intent of its maker is discovered, the will is solved, unless that intent runs counter to an inflexible rule of law or public policy." Burnet v. Burnet, 244 Mo. 491, 497, 148 S.W. 872, 874 (1912); Carlock v. Ladies Cemetery Ass'n, 317 S.W.2d 432, 439 (Mo.Sup. 1958). (6) Intent is to be ascertained from the instrument as a whole or, as is often said, from its "four corners" so as to give effect to all its provisions. Scullin v. Mercantile-Commerce Bank & Trust Co., 361 Mo. 337, 234 S.W.2d 597, 601 (1950); Weller v. Searcy, 343 Mo. 768, 123 S.W.2d 73, 77–78 (1938); Thomas v. Higginbotham, 318 S.W.2d 234, 237 (Mo.Sup.1958); Gehring v. Henry, 332 S.W.2d 873, 876 (Mo.Sup. 1960); Prior v. Prior, 395 S.W.2d 438, 442 (Mo.Sup.1965). (7) "A testator is presumed to know and intend the legal effect of the language he uses in a will." First Nat. Bank of Kansas City v. Hyde, supra, 363 S.W.2d at 653; Gehring v. Henry, supra, 332 S.W.2d at 876; Thomas v. Higginbotham, supra, 318 S. W.2d at 237. (8) "By reason of the infinite variety of expression employed in

---

3. "474.430 Court to conform to directions of will

"All courts and others concerned in the execution of last wills shall have due re-

gard to the directions of the will, and the true intent and meaning of the testator, in all matters brought before them."

wills, precedents are of less value in their construction than in many other fields of inquiry." Housman v. Lewellen, 362 Mo. 759, 244 S.W.2d 21, 23 (1951); Thompson v. Smith, 300 S.W.2d 404, 406 (Mo.Sup.1957).

With all this in mind, the issue, it seems to us, is a precise and simple one, namely, in applying Article II C(2) of Nora's will, are the heads of the stirpes in Nora's generation or are they in the succeeding generation of the nephews and the niece who are the parties here? If these heads are in the older generation, Judge Harper was right and the plaintiff must prevail. If they are in the later generation, the defendants' position is well taken.

The construction of disputable language of a will and testamentary trust is an unsatisfying assignment at best. Each side is convinced of the rightness of its approach. Family misunderstanding and bitterness are likely to ensue. Usually, the only witness who could really resolve any question of intent (assuming evidence as to intent is permissible) is the deceased and unavailable testator. And the necessity of will construction is always embarrassing for the lawyer-scrivener whose language is the subject of the dispute, for part of his assumed task is to guide the testator through various survivorship possibilities, ascertain his intent as to each, activate that intent by clear and indisputable language, and avoid controversy and the expense attendant upon litigation. Usually, as here, a plausible argument can be made by each side. The construing court, then, can only do its best and often is not completely convinced.

■ After careful consideration of the provisions of Nora's will, of the circumstances which attended its execution, and of the family relationship, we reach the same conclusion which Judge Harper reached. We do so for the following reasons:

1. The presence in Article II C(2) of *both* the words "per stirpes" and the words "as may then survive" provides an almost insurmountable hurdle for the defendants. The words "as may then survive" operate to defeat any substitute takers. The "per stirpes" provision, then, can apply only to ancestors, here Ben and Beckye. Thus, when the heads are placed in Nora's generation, all the words of Article II C(2) have a meaning and application. If, however, the heads are allocated to the next generation, it is difficult to give meaning and application to all the words of the Article.

2. If the words "as may then survive" had been omitted, the defendants' claim for three equal shares would necessarily prevail. The focus of "per stirpes" then would have to be on the younger generation. Such, in fact, was the wording of the typed initial draft. This demonstrates, however, that the words "as may then survive" can add little or nothing to defendants' analysis. Yet to treat the phrase as mere surplusage is to violate the principle that the instrument is to be construed "as to give effect to all its provisions." Weller v. Searcy, supra, 123 S.W.2d at 78.

3. Similarly, if the words "per stirpes" had been omitted, the defendants' claim for three equal shares again would prevail. See Mavrakos v. Papadimitriou, 331 S.W.2d 161 (Mo.App.1960). Similarly, too, this could be said to demonstrate that "per stirpes" adds little or nothing to defendants' analysis. One might argue that the presence of "per stirpes" protects issue, living at Beckye's death, of any then deceased person among the named four. This would have been important, for example, had issue of Dann survived Beckye or had Lee or Jeane or Emanuel predeceased Beckye (for each of them has children). Yet this very protection is afforded when the heads of the stirpes are in Nora's generation.

4. It is fairly clear, we feel, and entirely natural, that the primary objects of Nora's bounty were the members of her own generation rather than those of the succeeding generation. Lillian, of course, was gone when the will was drawn. But if Frances survived Nora

for 60 days, the whole of Nora's estate was to go to Frances. Even the $5,000 for Lee "in appreciation of the assistance he has given to me and my sister over the years" would be out. (One may speculate, of course, that Frances' will was parallel to Nora's and that Lee then was to receive his $5,000 at Beckye's death under Frances' will.) Beckye, the married sister, although not to receive the residue, took a life interest and had the protection afforded by the provision for emergency principal invasion on her behalf. These benefits all took precedence over those for the nephews and the niece.

5. The lawyer's handwritten interlineations in the typed initial draft of Nora's will appear to buttress this emphasis by Nora on her generation. Her attention and concern for the succeeding generation was fixed in time only at Beckye's death. What happened to members of the succeeding generation in the interim was of no expressed concern, for benefits to the sisters were then dominant. Without the additions by interlineation, however, the emphasis would have been on the four named nephews and niece at the time of Nora's death. This would have been inconsistent with the primary emphasis and was corrected accordingly.

6. The defendants, of course, argue that the monthly assistance afforded the sisters by Ben and, after his death, by his insurance and by Lee has significance. The suggestion is that this regular and continuing aid stands in vivid contrast to the total absence of assistance from Emanuel and Dann. In addition, Emanuel and Dann lived at a distance. There is force to this argument. The sisters undoubtedly were grateful to Ben and to Lee and undoubtedly they depended on Ben and on Lee because of their availability in the Saint Louis area. The argument, however, is substantially weakened by the presence of the $5,000 benefit for Lee payable at Beckye's death. This to an extent, at least, was reimbursement to the benefactors and was an expression of appreciation in testamentary fact as well as in words.

7. One is able to understand the disappointment on the part of Lee and of Jeane when, after their father's long continued assistance to the sisters and Lee's further help to them, and after Lee's acting in his fiduciary capacities without compensation, they find themselves together sharing only equally with Emanuel. But one can sympathize, too, with Emanuel who might say that his larger share is attributable only to misfortune in the loss of his brother Dann, that this loss should not serve to increase his cousins' shares, and that if Dann had survived Beckye, Emanuel would have no more than a quarter share of the residue. All these, however, may be said to be results which flow from life's uncertainties. The chronology of deaths, particularly if they are close in time, may produce contrasting results. But then it is the chronology, and not necessarily the testamentary plan, which is the fulcrum.

8. It is often said that the use of the word "among", as here, in contrast to the word "between", suggests distribution to individuals rather than to classes. Mavrakos v. Papadimitriou, supra, 331 S.W.2d at 165; Record v. Fields, 155 Mo. 314, 55 S.W. 1021, 1022 (1900). However, any possible significance in Nora's use of the word "among" is greatly lessened because of the presence of "per stirpes". The Missouri Supreme Court has noted that " 'among' is often incorrectly used for 'between' * * *." St. Louis Union Trust Co. v. Little, 320 Mo. 1058, 10 S.W.2d 47, 53 (1928). Further, when more than two persons are involved, as here, the use of "among" is not offensive or entirely inappropriate.

9. A like comment may be made with respect to the observation that, technically, one may not take stirpetally unless the deceased ancestor himself was a possible taker. See O'Reilly v. Jackson, 269 S.W.2d 631, 635 (Mo.Sup.1954); 96 C. J.S. Wills § 707, p. 80. Here under Article II no member of Nora's generation

134

is a potential taker and Ben is not even named in the will. But the presence of the words "as may then survive" is the defeating factor.

■ 10. Had Nora wished to divide the residue among the nephews and niece equally, she could have provided for its distribution according to the Missouri intestacy statutes and as though her death had immediately followed Beckye's. V.A.M.S. § 474.020 would then achieve the result. Not having done this, it may be said that she intended something other than the statutory plan. See O'Reilly v. Jackson, supra, 269 S.W.2d at 636.

11. The result proposed by the defendants also could have been easily provided by Nora, if that had been her intent, by the use of "per capita" or other like phrases much more direct and much less complex and obscure than the language the scrivener employed.

There are opposing arguments, of course. While the confusing language of the instrument necessarily leaves us with some lingering doubt, we are satisfied, because of the factors we have outlined above, that Chief Judge Harper's construction of Nora Kaufman's will was the appropriate one.

Affirmed.